No. 86,953

STATE OF KANSAS, *Appellee*, v. TANNER L. GREEN, *Appellant*.

(48 P.3d 1276)

Opinion filed July 12, 2002.

*Virginia A. Girard-Brady*, of Lawrence, argued the cause, and was on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, C.J.: Tanner L. Green appeals his jury trial first-degree murder conviction. The sole issue is defendant's claim that the admission of certain photographs of the deceased was erroneous as they were gruesome and prejudicial to the defendant.

## FACTS

By virtue of the nature of the single issue, the recitation of the facts will be limited to those relevant to that issue. On March 27, 2000, Janice Vrendenburg was found dead in her Wichita home. She had suffered blunt force trauma to her head from at least 11 impact blows. Evidence at the scene indicated the weapon was a Sony "boombox." Additionally, the victim's head had been nearly severed from her body by 11 movements of a sharp object across her neck.

At trial the State sought to introduce a substantial number of slides taken at autopsy to establish the cause of death and assist the medical examiner in her testimony. Outside of the presence of the jury, the trial court conducted a hearing as to which slides would be admitted. Ultimately, eight slides were held to be admissible. Defendant objected thereto. The slides are described as follows, along with the use made of each in the medical examiner's testimony:

Exhibit 53: Slide of left side of victim's face once the blood was cleaned away. The medical examiner (ME) used this slide to demonstrate the blunt force trauma to the victim's skull which caused fracture patterns extending to the brain; the extent of force necessary to cause the trauma, and that such injury was consistent with being assaulted with a "boombox."

Exhibit 54: Close-up of the injury to the left side of victim's head. The ME used this slide to establish that the injury took the form of the object used (pattern type injury) and that the victim was struck numerous times.

Exhibit 55: Another view of the injury to the left side of the head near the hairline. The ME used this slide to establish the injury as being a tear (tissue bridging) as opposed to a cut and to establish hemorrhaging in the soft tissue, indicating that the victim was alive when she sustained this injury.

Exhibit 56: Left forehead at the hairline showing the loose areas of laceration and exposing the depressed skull fracture of the left frontal bone.

Exhibit 57: Photo of gloved hand pulling back the skin to show there is some undercutting or loosening of the scalp from the skull by the blunt force injury. From the direction of the undercutting, *i.e.*, front to back, the ME opined the injury was inflicted front to back, similar to an injury sustained in a car accident from a windshield.

Exhibit 58: Back side of the victim's head depicting injuries to the mid-back of the head and the right side back of the head. The head was shaved to depict the lacerations and abrasions.

Exhibit 61: Incised wound of the neck viewed from the right side of the body. The ME used this slide to establish the wound's depth and location, and the likelihood that it was caused by a sharp knife being moved approximately 11 times across the area.

Exhibit 62: Incised wound of the neck viewed from a different angle. The ME used this slide to show the wound extended from the right side of the neck to the left side and into the vertebrae.

During the medical examiner's testimony, a juror became ill and a recess was ordered. The juror fainted and, in falling, struck his head on a table. Medical assistance was provided. The juror advised the court: (1) he had a problem with the sight of blood; and (2) the blow to his head had caused a severe headache. An alternate juror was substituted for the incapacitated juror. Defendant moved for a mistrial, which was denied.

## STANDARD OF REVIEW

In *State v. Bell*, 273 Kan. 49, 41 P.3d 783 (2001), we recently stated the well-established rules relative to the admission of photographs in homicide cases as follows:

"The admission of photographs in a homicide case is a matter within the trial court's discretion, and the trial court's ruling will not be disturbed on appeal absent the showing of an abuse of that discretion. *State v. Verge*, 272 Kan. 501, 515, 34 P.3d 449, 458 (2001). An abuse of discretion has occurred when the admitted photographs were unduly repetitious and cumulative or their introduction was solely for the purpose of prejudice. The admission of photographs in a murder case has rarely been held to be an abuse of discretion. *State v. Deal*, 271 Kan. 483, 493, 23 P.3d 840 (2001).

"Photographs depicting the extent, nature, and number of wounds inflicted are generally relevant in a murder case. *State v. Groschang*, 272 Kan. 652, 667, 36 P.3d 231 (2001). Photographs which are relevant and material in assisting the jury's understanding of medical testimony are admissible. Specifically, photographs which aid a pathologist in explaining the cause of death are admissible. *Deal*, 271 Kan. at 493. Photographs used to prove the manner of death and the violent nature of the crime are relevant and admissible. *Groschang* 272 Kan. at 667."

Before proceeding, it should be noted that defendant also complains as to the admission of a photograph marked as Exhibit 33 which he lumps together with the slides taken at the autopsy. Exhibit 33, a photo of the victim's head, was taken at the crime scene. This photo was admitted prior to the medical examiner's testimony, and no objection was made to its admission. Clearly, there is no abuse of discretion in the admission of Exhibit 33.

We turn to the slides described by defendant as "autopsy" photographs. It is true that they were taken at the time of the autopsy, but they are not autopsy photographs, as we frequently use that term to designate photographs of bodies after invasive procedures during autopsy have been performed. Here, the many injuries to the body depicted in the slides are the result of what the victim's killer did to her. The nearest to an invasive procedure being depicted is Exhibit 57, but that demonstrates a loosening of the scalp from blunt force injury. Invasive photos are admissible, but are subject to somewhat stricter tests when they show the injuries to the body inflicted by the autopsy procedure itself.

Defendant attempts to bolster his argument as to the slides being improperly admitted by arguing that the fainting juror proves his point. We disagree. The incident was unfortunate but is not significant to the determination of the issue before us.

This was an incredibly violent and gruesome homicide. At least 11 massive blows to the head were inflicted and did horrific damage to the face and skull. Additionally, near decapitation resulted from multiple sawing motions from a sharp object. Gruesome crimes result in gruesome photographs. Here, the trial court reviewed the proposed photographic exhibits, heard the medical examiner explain how her intended use thereof would assist in her testimony as to injuries inflicted and cause of death, and approved eight of the photographic slides for admission. Defendant does not even come close to establishing that the admission of the complained-of photographic evidence constituted an abuse of judicial discretion.

The judgment is affirmed.