No. 97,273

In the Matter of the Care and Treatment of RICHARD A. MILLER.

(210 P.3d 625)

Opinion filed July 10, 2009.

*Alex S. McCauley*, of Jenab & McCauley, LLP, of Olathe, argued the cause, and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Phill Kline*, district attorney, and *Steve Six*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: This is an appeal from respondent Richard A. Miller's indefinite civil commitment as a sexually violent predator under K.S.A. 59-29a01 *et seq.* (the Act). He argues that the district judge erred in denying his motion to stipulate to a prior sex crime case; erred in admitting evidence of other prior crimes or civil wrongs, including those that had no sexual component or had never been proved; and erred in entering judgment after a jury verdict that he qualified as a sexually violent predator under the Act when he had never been diagnosed with a sex-related abnormality or disorder. Miller also advances a cumulative error argument.

We affirm.

### Factual and Procedural Background

Evidence in Miller's commitment proceeding included testimony from the victim of an aggravated sodomy Miller committed in 1980 as well as from an investigator in that case; testimony from the victim of a burglary Miller committed in 1992; a charging document from the 1992 case, which included an attempted rape that was later dismissed; testimony from State psychologist Ryan David Donahue about Miller's numerous other prior crimes and civil wrongs, some with no sexual component and some never proved; and testimony from Miller's psychiatrist, William Logan.

Miller had pleaded guilty to aggravated sodomy, along with two other crimes after his 1980 abduction of then 15-year-old K.M. In his commitment proceeding, Miller moved to stipulate to the aggravated sodomy conviction, arguing that the State's plan to question the victim and former sheriff's office detective who investigated the crime would create undue prejudice. The district judge denied Miller's motion; K.M. testified about the crimes committed against her; and the detective testified about his investigation.

Miller's burglary conviction and attempted rape charge arose out of a 1992 incident in which Miller, free on parole, broke into the basement of a duplex while B.E. was bathing on the main floor. Miller filed a motion in limine to exclude B.E.'s testimony and any reference to the dismissed attempted rape charge in his commitment proceeding. Again, the district judge denied his motion. B.E. thus testified that, at the time of the burglary, she heard glass break,

walked to the top of her basement stairs, and fled when she saw Miller. The district judge also admitted, over Miller's objection, the State's initial 1992 complaint charging Miller with attempted rape.

Miller also sought unsuccessfully to limit Donahue's testimony. Donahue testified that in 1976 the State charged Miller for lewd and lascivious conduct and indecent liberties with a child under age 16. These charges were later dismissed when another person confessed to the crimes. Donahue also discussed the 1980 case; the 1992 case; and Miller's inappropriate behavior while incarcerated, including purposeful masturbation within view of a female employee, his stalking of female employees, and his persistent and aggressive behavior toward a prison therapist. Donahue also catalogued Miller's nonsexual criminal history, including car theft, second-degree murder, burglary of a drugstore, and numerous additional charges or convictions, at least one of which had been dismissed. Donahue's recitation included

"vagrancy, contributing to a child's misconduct, deprivation, theft, simple assault, public consumption of liquor, resisting arrest, disorderly conduct, simple assault, probation violations, burglary, criminal damage to property, resisting arrest, assault on a law enforcement officer, a liquor violation and disorderly conduct . . . that charge was actually dismissed—criminal attempt to commit burglary, theft, theft of lost or mislaid property, [and] multiple DUI charges."

Donahue also testified that he had administered two screening tests to Miller, which ranked him at "high risk" to commit a future sex offense. Donahue diagnosed Miller with alcohol dependence, cannabis abuse, amphetamine abuse, opioid abuse, and antisocial personality disorder with narcissistic personality traits. Donahue explained that Miller probably had never been diagnosed with a sexual disorder because there is no recognized general diagnosis applicable to persons who commit sexual offenses against adults. Donahue acknowledged that many career criminals have diagnoses of antisocial personality disorder and that not all such persons commit sex offenses. Finally, Donahue opined that Miller qualifies as a sexually violent predator under the Act.

Miller's psychiatrist, Logan, testified that individuals who are not diagnosed with a sexual disorder lack a drive or compulsion to

commit sexual offenses and that persons with diagnoses such as Miller's do not qualify as sexually violent predators. In fact, he said that he was surprised the State pursued Miller's commitment because Miller had never been diagnosed with a sexual disorder. Logan diagnosed Miller with dependence on alcohol, marijuana, amphetamines, and opiates; and antisocial personality disorder. Logan opined that Miller did not meet the statutory requirements for a sexually violent predator. In his view, although Miller's substance abuse problems and his antisocial personality disorder would qualify as "mental abnormalities" under the Act, they did not mean Miller would have difficulty controlling his future behavior.

Miller appealed his commitment to our Court of Appeals, which affirmed. We granted his petition for review.

### *Motion to Stipulate*

On appeal, Miller does not argue that the testimony from K.M. or the detective on the 1980 crimes was not relevant to the issue facing the jury. Rather, he challenges the district judge's decision allowing the State to use this particular method—live testimony from a victim and law enforcement—to prove its case. Miller characterizes this method as unduly prejudicial and cumulative of Donahue's relatively dispassionate evidence of his criminal history, including the 1980 case. On appeal, we review both a district court's assessment of undue prejudice and its decision on whether evidence should be excluded as cumulative for abuse of discretion. See *State v. Vasquez*, 287 Kan. 40, 50, 194 P.3d 563 (2008) (prejudice); *State v. Green*, 274 Kan. 145, 147, 48 P.3d 1276 (2002) (cumulative nature). Discretion is abused when no reasonable person would decide an issue in the same way. See *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006).

Our Court of Appeals rejected Miller's argument that the district judge was compelled to accept Miller's stipulation to the 1980 offenses, relying on two decisions from the Texas Court of Appeals. See *In re Care & Treatment of Miller*, 39 Kan. App. 2d 905, 186 P.3d 201 (2008) (citing *In re Adams*, 122 S.W.3d 451, 453 [Tex. App. 2003] [court may admit sex offender's prison disciplinary records, copies of previous conviction records despite offender's stip-

ulation]); *In re Commitment of Petersimes*, 122 S.W.3d 370, 373 (Tex. App. 2003) (court may admit copies of sex offender's indictments, judgments of prior offenses despite offender's stipulation). The Texas cases can be distinguished from the particular situation before us because neither involved the admission of live testimony on a subject of a stipulation. They stand for the broader proposition that a respondent's stipulation does not necessarily cut off the State's alternative proof options, but the documentary evidence at issue in the two Texas commitment proceedings obviously had far less potential to inflame a jury than the testimony Miller now challenges.

Miller asserts that the United States Supreme Court decision in *Old Chief v. United States*, 519 U.S. 172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997), governs. There, the government charged defendant Johnny Lynn Old Chief, a felon, with criminal possession of a firearm. Defendant offered to stipulate to his prior felony conviction of assault, but the government refused and provided other evidence of Old Chief's prior conviction during trial. *Old Chief*, 519 U.S. at 175-77. The Supreme Court reversed and remanded, holding:

"[A] district court abuses its discretion if it spurns [a defendant's] offer [to stipulate to a prior judgment] and admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." *Old Chief*, 519 U.S. at 174, 192.

This court analyzed *Old Chief* in *State v. Lee*, 266 Kan. 804, 815, 977 P.2d 263 (1999), a case with similar facts, and held: "When requested by a defendant in a criminal possession of a firearm case, the district court must approve a stipulation whereby the parties acknowledge that the defendant is . . . a prior convicted felon." *Lee*, 266 Kan. at 815. This court, however, warned that "[its] views should not be read as limiting the State in presenting a full indepth story of a prior crime when the prior crime has relevance independent of merely proving prior felony status." *Lee*, 266 Kan. at 816.

This court went further in *In re Care & Treatment of Crane*, 269 Kan. 578, 592, 7 P.3d 285 (2000), *vacated on other grounds*

534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002), holding that *Lee* (and implicitly *Old Chief*) did not apply to sexually violent predator commitment proceedings. There, the State refused to stipulate to respondent Michael Crane's convictions, instead calling "a number of witnesses who testified about past instances of Crane's sexual behavior." 269 Kan. at 590. Most of these "behavior" witnesses, however, "testified about incidents other than the aggravated sexual battery that was the basis for the conviction the jury was required to find." *Crane* 269 Kan. at 590. This court, distinguishing *Lee*, held: "[E]vidence of prior conduct was material to the question of likelihood that the respondent would engage in repeat conduct as well as to the element of conviction of prior conduct." *Crane*, 269 Kan. at 592; see also *Detention of Turay*, 139 Wash. 2d 379, 400-02, 986 P.2d 790 (1999) (*Old Chief* not applicable to sexually violent predator commitment proceedings; district court may allow testimony from victim of sexual offense despite respondent's offer to stipulate to conviction).

Thus we hold that the district judge did not abuse his discretion in denying Miller's motion to stipulate to his 1980 conviction. The evidence was neither unduly prejudicial nor cumulative.

### Admission of Evidence of Other Prior Crimes or Civil Wrongs

Miller makes several arguments regarding this issue. First, he contends that broad language in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), applies and dictates reversal under K.S.A. 60-455. Second, he argues that evidence of prior crimes or civil wrongs with no sexual component was irrelevant and unduly prejudicial; although his prior nonsexual bad acts might indicate he is prone to recidivism generally, they do not prove he is likely to commit a future sex offense. Third, Miller argues that Donahue's testimony concerning the 1992 burglary was cumulative and that evidence of any charge dismissed for lack of evidence or misidentification misled the jury and denied him a fair trial.

### *Gunby*

Miller's *Gunby*-based contention was not raised until he filed his petition for review. Generally issues not raised before the dis-

trict court cannot be raised on appeal. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007). Moreover, we typically require issues addressed on petition for review to have been preserved in the Court of Appeals, if not decided there. See Rule 8.03 (2008 Kan. Ct. R. Annot. 65). We have occasionally applied exceptions, however, including when the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case. See *Smith v. Yell Bell Taxi, Inc.*, 276 Kan. 305, 311, 75 P.3d 1222 (2003). Invocation of this exception is appropriate here to settle any conflict between *Gunby* and our 1998 decision in *In re Care & Treatment of Hay*, 263 Kan. 822, 953 P.2d 666 (1998).

Our standard of review for interpretation of our own case law is de novo. See *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 386, 996 P.2d 821 (2000). The same is true for interpretation of statutes. See *Rural Water District #2 v. The City of Louisburg*, 288 Kan. 811, Syl. ¶ 1, 207 P.3d 1055 (2009).

In *Gunby*, this court stated that admission of all evidence of prior crimes or civil wrongs would be controlled by its K.S.A. 60-455 analysis. See *Gunby*, 282 Kan. at 57. This statement is in tension with our holding in *Hay*, 263 Kan. at 838, that even uncharged prior conduct is material and admissible in a trial to determine if an individual is a sexually violent predator and that "the prohibitions of K.S.A. 60-455 are not applicable." We affirmed our *Hay* holding in *Crane*, 269 Kan. at 591-92, another sexually violent predator commitment proceeding:

" 'We are hard-pressed to see how [prior bad acts] can be prohibited by K.S.A. 60-455 [in sexually violent predator cases] when it is an essential element of the required proof and necessary for the decision-making process of the jury.' [Citation omitted.]

. . . .

"[E]vidence of prior conduct [is] material to the question of likelihood that the respondent would engage in repeat conduct as well as to the element of conviction of prior conduct."

Six years after *Crane*, in *Gunby*, a criminal case, we did not discuss the unique nature of commitment proceedings under the Act. We

focused only on K.S.A. 60-455 and common-law interpretations and applications of it in the setting of criminal trials.

At the time of Miller's commitment trial, K.S.A. 60-455 provided:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

This court has repeatedly held: "Under the plain language of [K.S.A. 60-455], [a court must determine] whether the evidence relates to a prior crime or civil wrong and, if so, whether it is admitted solely to prove propensity or whether it is relevant to prove some material fact other than propensity." *State v. Warledo,* 286 Kan. 927, 941, 190 P.3d 937 (2008). Prior crimes or bad acts may not be admitted to prove a defendant's propensity to have committed a crime on a specified occasion in the past. See *State v. Reid,* 286 Kan. 494, 186 P.3d 713 (2008) (K.S.A. 60-455 designed to eliminate danger evidence will be considered to prove the defendant's mere propensity to commit charged crime); *State v. Garcia,* 285 Kan. 1, 169 P.3d 1069 (2007) (under plain, unambiguous language of K.S.A. 60-455, evidence of prior crimes, civil wrongs cannot be admitted to prove defendant's propensity to commit charged crime); *State v. Horton,* 283 Kan. 44, 151 P.3d 9 (2007) (before admitting evidence of other bad acts, prior crimes, district judge must determine whether evidence is relevant to any disputed material fact other than the defendant's propensity to commit charged crime). *Gunby* also dealt with a situation in which the State sought to use evidence of a prior crime or civil wrong to demonstrate the likelihood that the defendant's behavior at the time of a charged crime was consistent with behavior or acts that predated it. See *Gunby,* 282 Kan. at 47.

K.S.A. 59-29a01 *et seq.,* also deals with the predictive force of a particular individual's earlier conduct, with a proven propensity and whatever rough calculation of probability it supports. But the

Act and its procedures for indefinite commitment of sexually violent predators do not use prior conduct to prove a "disposition to commit crime or civil wrong *as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.*" (Emphasis added.) K.S.A. 60-455. It does not use one historical act to prove another historical act. It looks to the future, to the probability of a respondent's continuing "menace to the health and safety of others." K.S.A. 59-29a02(c). The statutes can thus be read in harmony with each other. See *State v. Johnson*, 286 Kan. 824, 850-51, 190 P.3d 207 (2008).

We also note that our sister state of Wisconsin addressed the intersection of its sexual predator commitment process and its equivalent to K.S.A. 60-455's "other acts" provision in *State v. Franklin*, 270 Wis. 2d 271, 677 N.W.2d 276 (2004). It held that the provision did not apply to sexually violent predator commitment proceedings, because it "look[ed] back to analyzing proof of acts that [had] already occurred [rather than] forward to assess the substantial probability of future conduct." *Franklin*, 270 Wis. 2d at 282. " '[T]he nature of the [sexually violent] predator inquiry virtually guarantees the wide-ranging admissibility of evidence concerning the defendant's past crimes and transgressions.' " *Franklin*, 270 Wis. 2d at 284 n.9.

We agree with the Wisconsin outcome and rationale. There is no doubt that our Act also requires evidence of a sex offender's propensity to commit sexually violent acts in the future.

The broad reach of our statement in *Gunby* about the universality of its K.S.A. 60-455 analysis must be circumscribed in light of *Hay*, *Crane*, and now this case. Miller is not entitled to reversal on this argument.

Nonsexual Priors

Miller's argument that evidence of his prior acts with no sexual component was irrelevant and unduly prejudicial raises an issue of first impression in Kansas. Many of our sister states have held that nonsexual prior crimes and civil wrongs are admissible in sexually violent predator commitment proceedings. Our research has found no jurisdiction holding otherwise.

" 'Relevant evidence' means evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). "The concept of relevance under Kansas law includes both whether evidence is probative and whether it is material." *Vasquez*, 287 Kan. at 50. We review whether evidence is probative under an abuse of discretion standard and whether it is material under a de novo standard. See *Vasquez*, 287 Kan. at 50. As mentioned above, a district judge's determination on whether certain evidence is unduly prejudicial is reviewed for abuse of discretion.

In *Det. of Stout*, 159 Wash. 2d 357, 150 P.3d 86 (2007), the Supreme Court of Washington held that nonsexual criminal history is relevant if used to prove a mental abnormality such as antisocial personality disorder. In addition, the Supreme Court of Wisconsin has held:

"[P]ast uncontrolled behavior is relevant to whether a person will exhibit uncontrolled behavior in the future. [Citation omitted.] As the United States Supreme Court has explained, '[p]revious instances of violent behavior are an important indicator of future violent tendencies.' [Citation omitted.] . . . [E]ven though [many of the past acts were not sexual], they were relevant to [the] diagnoses of paraphilia and schizophrenia, as both experts used this evidence to support their opinions. Additionally, . . . the standard risk assessment for sexual offenders takes into account all past violations of the law in attempting to evaluate the probability of future sexually assaultive behavior." *Franklin*, 270 Wis. 2d at 288-89.

In this case, given the opposing experts' agreement on Miller's diagnosis of antisocial personality disorder, and its role in Donahue's ultimate opinion on whether Miller qualified as a sexually violent predator, the sole issue the jury was charged to decide, we have little hesitation in holding that the nonsexual prior crimes and civil wrongs were both probative and material, *i.e.*, relevant. Furthermore, while prejudicial, they were not unduly so. The jury had plenty of other evidence, including K.M.'s testimony, on which to rely for its verdict.

We do not mean to suggest that all nonsexual prior crimes and civil wrongs committed by a respondent in a sexual predator civil commitment proceeding are automatically admissible. Their relevance will be determined by the particular facts of each case, by

how those facts fit together, by the diagnosis or competing diagnoses, by how that diagnosis or diagnoses affect the expert opinion or opinions, and by the jury focus outlined by the Act. It appears that here the district judge's decision was entirely sufficient under our usual relevance and prejudice rubrics. We acknowledge that those rubrics may be somewhat vulnerable to manipulation in cases such as Miller's—particularly to the extent that all recognize, or soon will, that the more general a diagnosis the wider array of nonsexual criminal history it may allow. But we regard this as a reason to urge the psychiatric community to develop more specific diagnoses for offenders like Miller, rather than as a reason for us to formulate new, targeted common-law rules for relevance and prejudice analysis.

## 1992 Offense

Miller's argument that Donahue's testimony about the 1992 burglary was cumulative of B.E.'s testimony is without merit. Donahue could not testify to anything other than the mere fact of conviction and its effect on Miller's diagnoses and his opinion. B.E., like K.M. on the 1980 case, could testify in far greater detail about the circumstances surrounding the crime and her victimization. To the extent there was minor overlap in the testimony of these two witnesses, the district judge did not abuse his discretion in allowing it. See *Green*, 274 Kan. at 147.

## Crimes Dismissed for Lack of Evidence or Misidentification

*Hay* held that even uncharged prior crimes may be admissible against a respondent in a sexually violent predator commitment proceeding. Miller's argument here is distinct and intuitively appealing: Evidence of a prior charge that has been dismissed for lack of evidence or misidentification misleads a jury and denies a respondent a fair trial.

In the abstract, we agree that the State's sponsorship of evidence of crimes with which a respondent has been charged but that have later been dismissed for lack of evidence or misidentification is playing with fire. The problem for Miller is that it appears from the record before us that any misdirection of his jury's attention

was temporary and corrected before the jury began its deliberation. As our Court of Appeals noted, the district judge admitted a letter confirming that the attempted rape charge filed in the 1992 burglary had been dismissed. Donahue testified that the 1976 sex crime charges were dismissed when someone other than Miller confessed to the crimes. Donahue also mentioned that another charge included in his recitation was dismissed. We therefore are not persuaded that any knowledge the jury had about specifics in Miller's charging and conviction history was inaccurate or that, in the context of his comprehensive, criminal career, it denied him a fair trial.

### *General Rather Than Sex-related Abnormality or Disorder*

Miller makes both statutory and Fourteenth Amendment due process claims that he must have been given a diagnosis of a sex-related abnormality or disorder in order to be indefinitely committed as a sexually violent predator. Miller asserts that we must distinguish between a "dangerous sexual offender" and a "dangerous but typical recidivist." The former may be committed under the Act, while the latter may not.

Both statutory and constitutional interpretation are subject to unlimited review on appeal. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008) (statutory interpretation); *State v. Allen*, 283 Kan. 372, 374, 153 P.3d 488 (2007) (constitutional interpretation).

The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

K.S.A. 59-29a02 provides:

"(a) 'Sexually violent predator' means any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence.

"(b) 'Mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sex-

ually violent offenses in a degree constituting such person a menace to the health and safety of others.

"(c) 'Likely to engage in repeat acts of sexual violence' means the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others."

The language of the statute is clear, and Miller's position is without merit. The statute does not narrowly define mental abnormality as a sex-related disorder. It provides for the commitment of a sex offender with *any* mental abnormality—whether congenital or acquired, whether affecting emotional or volitional capacity—that makes him or her likely to engage in repeat acts of sexual violence, such that he or she or the acts pose "a menace to the health and safety of others." K.S.A. 59-29a02(b).

Moreover, the statute's definition and procedure do not offend due process. *Kansas v. Crane*, 534 U.S. 407, 409, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002) ("mental abnormality" as defined by Act satisfies substantive due process); *In re Detention of Barnes*, 689 N.W.2d 455, 458-60 (Iowa 2004) (due process does not require diagnosis of sexual disorder; due process satisfied when condition, disorder predisposes particular person, under particular circumstances, to commit sexually violent offenses); *State v. Adams*, 223 Wis. 2d 60, 588 N.W.2d 336 (1998) ("mental disorder" encompasses more than sex-related disorders; person with antisocial personality disorder, no other mental disorder, may be sexually violent person). Not every sex offender whose diagnoses match Miller's will necessarily qualify as a sexually violent predator under the Act, but Miller received all the process due to him under the Act and the federal Constitution.

### Cumulative Error

Miller also briefly references the cumulative error doctrine as a basis for reversal. Seeing no errors to combine, we do not apply the doctrine. See *State v. Davis*, 283 Kan. 569, 583, 158 P.3d 317 (2007). There is no cumulative error.

Affirmed.

MCFARLAND, C.J., not participating.

STANDRIDGE, J., assigned.█

ROSEN, J., dissenting: I respectfully dissent from the majority opinion, which essentially deems as relevant and admissible any prior conduct or allegations, even dismissed charges of criminal wrongdoing proven to be perpetrated by someone other than the respondent, when the court or jury is making the determination of whether a person is a sexually violent predator. Such a holding is contrary to the procedural safeguards put in place by our legislature when creating this statute and ignores our own rationale and recent decisions regarding the admission of criminal and civil prior bad acts.

When the legislature drafted and passed K.S.A. 59-29a02, they put in place procedural safeguards that are similar to those contained in the Kansas Code of Criminal Procedure. K.S.A. 59-29a07 requires that any court or jury shall determine, beyond a reasonable doubt, whether the person is a sexually violent predator and that, if such determination is made by a jury, it shall be by unanimous verdict. Other involuntary commitments require a lesser burden; probable cause for temporary detention, K.S.A. 59-29b59, and clear and convincing evidence in cases involving involuntary commitment for care and treatment, K.S.A. 59-29b66. Clearly the legislature recognized that depriving citizens of their liberty based on speculation and conduct that has yet to occur requires the State to meet the highest of burdens and afford those accused the greatest protections that the law will allow.

We likewise should not abandon evidentiary safeguards in these proceedings. In *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), we painstakingly analyzed the admission of prior bad act evidence independently of 60-455 and recognized at least three types of prejudice that can result:

" ' "First a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might prop-

erly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed." ' " 282 Kan. at 48-49 (quoting *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 [1973]).

We put "an end to the practice of admission of other crimes and civil wrongs evidence independent of [60-455]." 282 Kan. at 57. We declared *res gestae* and other means of independently admitting this type of evidence as "dead" in Kansas. 282 Kan. at 63.

*Gunby* and its progeny seemed to have laid this matter to its well-deserved rest. Unfortunately, the issue has now taken on the character of a kind of judicial "Whac-a-Mole" arcade game that insists on popping up from its settled fate. By finding that any and all prior bad acts are admissible in these proceedings independently of 60-455, we have essentially overruled the core of the holding in *Gunby*. The majority maintains that K.S.A. 60-455, by its literal terms, does not apply because what is sought to be proved in this proceeding is not "that the person committed another crime or civil wrong on another specified occasion." However, the real target of 60-455 is using past conduct "to prove his or her *disposition* to commit" crimes as an evidentiary basis that supports an inference that leads to an ultimate conclusion, which is what the majority opinion allows here. By ignoring the core purpose and underlying rationale of 60-455, the majority undermines the procedural safeguards enacted by our legislature concerning this involuntary commitment procedure. I would find that the requirements of K.S.A. 60-455 do not apply any differently in these proceedings than they do in any other judicial proceeding which may result in the lengthy or permanent deprivation of liberty and that evidence of prior bad acts, unrelated to sexual violence, are not admissible to prove a person's disposition to commit sexually violent crimes at some unspecified future time absent our current 60-455 analysis.

STANDRIDGE, J., joins in the foregoing dissent.