NOT DESIGNATED FOR PUBLICATION

No. 115,792

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
CHARLES E. SMITH.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed March 10, 2017. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Bryan C. Clark*, assistant solicitor general, of Office of Attorney General, for appellee.

Before PIERRON, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*: Charles E. Smith appeals from the determination by a Reno County jury that he is a sexually violent predator (SVP) subject to involuntary commitment under the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.* (the Act). Since we find no errors in the underlying district court proceedings, we affirm.

FACTS

Smith was convicted in 2010 in Reno County of indecent liberties with a child, and failure to register as a sex offender. Smith had prior convictions for sexual battery and statutory rape in at least two other states. Before his arrest in Kansas, there were also warrants for his arrest in multiple states for failing to register as a sex offender.

Based on an excerpt of his sentencing journal entry in the record, Smith was given an underlying standard prison sentence of 36 months, with probation of 36 months

1

granted through Community Corrections. Smith's probation was twice revoked: once in May 2013 for absconding from supervision and again in November 2013 for staying at an emergency shelter when he had been instructed not to do so. Other violations included attempting to find housing near schools. He also attempted to contact the victim from his indecent liberties with a child conviction, and he had no relapse prevention plan. Smith ended up serving various portions of his sentence and was due to be released in January 2015.

Prior to his scheduled release in January 2015, the State moved to have Smith classified as an SVP. While serving his sentence, Smith refused to attend the sex offender treatment program available at his prison which took months to complete; it was not until he learned of the State's SVP petition, filed mere weeks before his release, that he expressed an interest in attending.

The district court granted Smith's request to be tried by a jury on the State's SVP petition. At trial, the State called two expert witnesses who both opined that Smith was an SVP under the Act. Although the district court granted Smith's request to be examined independently and subsequently ordered an independent evaluation, Smith did not present any evidence to contradict the State's experts.

Dr. Angelina Johnson, a psychologist at Larned State Hospital, testified that she performed a forensic evaluation of Smith. In addition to meeting with Smith over three sessions for a total of 5 hours, Dr. Johnson also conducted an extensive records review, which included a comprehensive evaluation of not only Smith's prison records but medical records and psychiatric records from numerous hospitalizations, which began for Smith at the approximate age of 10 years old and continued through to the SVP assessment when he was approximately 28 years old. Dr. Johnson also conducted several screening tests, which were used in part to diagnose, and in part to determine the risk of recidivism. The results of the two static tests revealed Smith had a moderate to high risk

of committing another sex offense within 5 years of being in the community. The results of the test for psychopathy determined that Smith exceeded the cut-off score, resulting in his qualifying for that diagnosis. Adding Smith's psychopathic personality to the recidivism results of the two static tests increased his risk of committing a sex offense in a shorter amount of time.

After diagnosing Smith with, among other conditions, antisocial personality disorder and borderline personality disorder, Dr. Johnson testified that it was the first time she had evaluated someone who met the diagnostic criteria for two different personality disorders. She also testified that Smith's psychopathy was the "most extreme" she had seen at the hospital. In her testimony, Dr. Johnson gave her opinion about Smith's likelihood of recidivism and how that contributed to her assessment of whether he was an SVP:

> "My opinion is that the organization of [Smith's] personality, his interactions with his environment, combined with his history, treatment, noncompliance, supervisory noncompliance; all these things taken together set somebody up for reoffending and the psychopathology piece of it, the psychopathic inventory, that's again associated with a high level of recidivism. It's a significant factor there.
>
> . . . .
>
> "In my opinion he meets the [statutory] criteria [as a sexually violent predator]."

The State's second expert was Dr. Derek Grimmell, a forensic psychologist employed by the Kansas Department of Corrections (KDOC). Dr. Grimmell was requested to do a clinical services report on Smith—a summary of all of the factors to evaluate a person's risk of reoffending. Smith refused to cooperate with Dr. Grimmell, so Grimmell's evaluation was limited to a review of all of Smith's KDOC records, Smith's Larned State Hospital records, other psychiatric records available to him, and KDOC data and probation records. Dr. Grimmell also conducted static testing used in sex offender

3

treatment. The results of the static testing revealed a moderately high risk of Smith being reconvicted of a sexual offense within 5 years.

Based on the files and data available to him, Dr. Grimmell diagnosed Smith with antisocial personality disorder. Dr. Grimmell testified that the purpose of his evaluation of Smith was to assess his risk of reoffending, and he concluded that Smith met the statutory criteria to be classified as an SVP. He affirmed that Smith was likely to commit repeat acts of sexual violence because of his personality disorder.

After deliberations, the jury found Smith was an SVP as defined by K.S.A. 2016 Supp. 59-29a02(a), subject to involuntary commitment. Smith filed a timely pro se appeal.

ANALYSIS

When presented with an issue of whether evidence is sufficient to sustain the State's burden of proof in an SVP case, an appellate court reviews all of the evidence in the light most favorable to the State and determines whether it is convinced that a reasonable factfinder could have found the State met its burden to demonstrate beyond a reasonable doubt that the individual in question is an SVP. The appellate court does not reweigh evidence, determine the credibility of witnesses, or resolve conflicts in the evidence. *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

To find that Smith was an SVP, the jury must have determined, beyond a reasonable doubt, that Smith was (1) convicted of or charged with a sexually violent offense, (2) suffered from a mental abnormality or personality disorder which (3) makes him likely to engage in repeat acts of sexual violence, and (4) he has serious difficulty controlling his dangerous behavior. K.S.A. 2016 Supp. 59-29a02(a); *Kansas v. Crane*, 534 U.S. 407, 412-15, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002).

4

Smith argues on appeal that there was insufficient evidence to support a jury finding that he is a sexually violent predator. Specifically, Smith contends that the State's case fails on the third requirement—that he is likely to commit repeat acts of sexual violence because of his mental abnormality or personality disorder. He argues that this determination is not for the experts to make, but rather is up to the jury:  "[T]he experts did not sufficiently testify to establish Smith is likely to reoffend due to a mental abnormality or personality disorder." He raises no other issues.

The jury returned a verdict that Smith met the criteria of an SVP. The record reveals that the jury instructions included the following:  that the State had the burden to prove beyond a reasonable doubt that Smith was an SVP; the statutory elements of SVP classification were itemized and each had to be proved by the State, and key terms were defined; that if any of the jury members had a reasonable doubt as to the truth of the claims required to be proved by the State, the jurors "must find that the respondent is not a sexually violent predator"; that the law permits experts to give their opinions and that the jury members should give those opinions the weight and credit they determine is appropriate; and that the verdict must be based entirely upon the admitted evidence and the law in the instructions. There is nothing in Smith's brief to support his contention that the jury did not, in fact, "weigh the evidence to determine if [it] supports" the jury's verdict.

Without explanation, Smith argues that it is "not up to the experts to decide" if he is likely to commit repeat acts of sexual violence based on his mental abnormality or personality disorder. This suggests that Smith found the opinions of the experts (Drs. Johnson and Grimmell) as to this particular element of the statute insufficient, although their opinions and diagnoses under the other elements are not challenged on appeal. Smith does not argue that the doctors' testimony was improper or inadmissible but simply that it was insufficient to establish that he meets the third prong of the SVP test. Smith

5

apparently relies on the lack of the term "predisposes" in the doctors' assessments to support his argument.

The word "predisposes" is not found in the statutory elements to classify an individual as an SVP. Rather, it is found in the definition of "mental abnormality" to explain one possible type of psychiatric condition under the statute in the second element, *i.e.*, that a respondent suffers from a mental abnormality or personality disorder. Both Drs. Johnson and Grimmell testified that Smith had antisocial personality disorder, which had its own separate definition in the jury instructions—one that did not include the requirement of a predisposition to commit sexual violence. Consequently, the doctors' testimony need not have specifically articulated that Smith's condition predisposes him to committing further sexual offenses. In accordance with the language of the statute, both doctors opined that his personality disorder made Smith likely to engage in repeat acts of sexual violence. Finally, the Act does not require the psychiatric diagnosis to reflect or incorporate a sexual component; Smith's uncontested diagnosis of antisocial personality disorder satisfies the statute. See *In re Care & Treatment of Miller*, 289 Kan. 218, 231, 210 P.3d 625 (2009).

When determining that Smith's mental abnormalities or personality disorders make it likely that he will commit future sex crimes, the jury looked to the evidence presented at trial, including the uncontroverted expert testimony, the several tests that were conducted, and the comprehensive records reviews. A review of the trial record and expert testimony summarized above supports the jury's finding. The evidence when viewed in the light most favorable to the State could easily convince a reasonable factfinder that the State met its burden to prove beyond a reasonable doubt that Smith is a sexual violent predator.

Affirmed.