NOT DESIGNATED FOR PUBLICATION

No. 111,541

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
ERIC ALAN RIGGS.

MEMORANDUM OPINION

Appeal from Harvey District Court; RICHARD B. WALKER, judge. Opinion filed October 7, 2016.
Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL, J., and BURGESS, S.J.

*Per Curiam*: Eric Alan Riggs was determined by a jury to be a sexually violent predator (SVP). Riggs appealed. While his appeal was pending, Riggs filed a motion claiming he received ineffective assistance of trial counsel during the commitment proceedings. This court stayed the appeal and remanded the case for a hearing on Riggs' claim. After conducting an evidentiary hearing, the district court ultimately found no merit to Riggs' claim of ineffective assistance of counsel. Riggs filed a notice of appeal regarding this decision and we lifted the stay on his appeal challenging his commitment. For the reasons stated below, we affirm.

FACTS

In 2008, Riggs was convicted of aggravated indecent solicitation of a child, a sexually violent offense. Riggs was scheduled to be released from prison in October

1

2012. In September 2012, however, the State filed a petition seeking to have Riggs civilly committed under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 *et seq.*, asserting that there was probable cause to support the determination that Riggs was an SVP. Attached to the State's petition was a clinical services report from Dr. Bradford Sutherland, who diagnosed Riggs with pedophilia and a personality disorder and determined Riggs had a high risk of sexual recidivism. The court set the matter for jury trial.

Before trial, the State filed a "Notice of Intent to Rely Upon K.S.A. 59-29a06(c)," as required under the statute, to advise Riggs that the State intended to present expert testimony in the KSVPA proceedings based on otherwise inadmissible hearsay. After an initial mistrial, a second trial was held beginning December 16, 2013.

The first witness for the State was Officer Randy Jordan. Jordan worked for the Newton Police Department at the time of the investigation into Riggs' 2008 conviction of aggravated indecent solicitation of a child. Jordan testified that in September 2007, he received a report that Riggs had placed his penis in the mouth of A.M., a 5-year-old boy. When the State questioned Jordan about A.M.'s statements regarding the reported offense, Riggs' counsel objected. The district court indicated that it would deal with the objection later in order to create a record outside the presence of the jury and instructed the witness to respond to the State's questions. Jordan then testified that A.M. told him that Riggs placed his penis in A.M.'s mouth on approximately 60 occasions and that "white stuff" had come out on at least one occasion. A.M. also told Jordan that Riggs instructed him not to tell anybody and that Riggs threatened to kill A.M. and his parents if he did so.

Officer Jordan next testified about an investigation he conducted into an allegation that was related to the report he received about Riggs' alleged abuse of A.M. Specifically, Jordan followed up on a report that Riggs previously had placed his penis in the mouth of

his 4-year-old daughter, S.R. Although the Kansas Department of Social and Rehabilitation Services (now the Kansas Department for Children and Families) already had looked into the allegation and found it to be unsubstantiated, Jordan said he believed it was necessary to personally interview S.R. himself because the new allegations from A.M. were so similar to the prior allegation by S.R. Jordan said that during his interview with S.R., she disclosed that the abuse had occurred.

The State then questioned Officer Jordan about his interrogation of Riggs. Jordan said Riggs initially denied the allegations but ultimately confessed to placing his penis in the mouth of both A.M. and S.R.

After the State was finished with its examination of Officer Jordan, the district court turned to the objection made by Riggs' trial counsel. Outside the presence of the jury, counsel argued that Jordan's testimony about A.M.'s and S.R.'s statements was inadmissible hearsay and that other evidence referenced in the State's opening statement should be excluded as prior bad acts under K.S.A. 60-455. In response, the State referred to its notice of intent to rely on K.S.A. 59-29a06(c) for the admission of this testimony, which allows expert witnesses in KSVPA proceedings to consider inadmissible evidence in forming opinions if certain conditions are satisfied. The district court overruled Riggs' objection, noting that K.S.A. 60-455 was inapplicable in SVP commitment proceedings and finding that Jordan's testimony was permitted by K.S.A. 59-29a06(c).

Sergeant Bryan Hall was called as the State's second witness. Hall also worked for the Newton Police Department at the time of the investigation into Riggs' 2008 conviction of aggravated indecent solicitation of a child. Hall stated that he went with Officer Jordan to interview Riggs. According to Hall, Riggs admitted to forcing A.M. to perform oral sex on two occasions and threatening harm to A.M. and his family if he told anyone. Hall testified that Riggs also admitted to placing his penis in S.R.'s mouth and to attempting to rape an 81-year-old woman when he was 15 years old.

3

As its next witness, the State called Phillip Hart, a licensed clinical psychotherapist and the clinical supervisor for the Sex Offenders Treatment Program at Lansing Correctional Facility during 2010-2011. Hart was Riggs' primary therapist in the program. Hart discussed Riggs' participation in that program, including statements Riggs made and documents Riggs completed regarding his sexually violent offenses.

Mary Mains, an intake investigator for the Kansas Department of Corrections (KDOC), was the next witness called by the State. Mains briefly testified about how she prepared a Reception Diagnostic Unit (RDU) report for Riggs when he initially was sent to prison. When the RDU report was drafted in 2008, Mains wrote that Riggs seemed to take no responsibility for his offenses and denied sexually assaulting A.M.

Dr. Bradford Sutherland, a licensed clinical psychologist who prepared Riggs' clinical services report, testified next. Dr. Sutherland testified to his opinion that Riggs suffers from pedophilia and a personality disorder, that given these mental abnormalities or personality disorders Riggs is likely to re-offend, and that Riggs "is going to have some serious problems controlling his behavior."

Finally, the State called Dr. Rebecca Farr, a psychologist who conducted a forensic evaluation of Riggs. Dr. Farr testified to her opinion that Riggs' mental abnormality or personality disorder makes him likely to engage in repeat acts of sexual violence, that he has serious difficulty controlling his dangerous behavior, and that he meets the criteria to be an SVP.

Before turning the case over to the defense, the State moved to admit into evidence Exhibit 12 (the probable cause affidavit) and Exhibit 15 (the presentence investigation [PSI] report) because these exhibits, which contained A.M.'s statements to Officer Jordan, were relied upon by the experts in forming their opinion. The district court granted the State's motion to introduce the exhibits into evidence over the objection

4

of Riggs' counsel. After the State rested, Riggs presented witnesses and exhibits and testified on his own behalf.

After deliberations, the jury found beyond a reasonable doubt that Riggs was an SVP. Based on the jury's finding, the district court committed Riggs to the custody of the Secretary of the Kansas Department of Aging and Disability Services for care and treatment. Riggs appealed. While Riggs' appeal was pending, his appellate counsel filed a motion with this court requesting a remand for the district court to conduct a hearing consistent with *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986), based on allegations of ineffective assistance of trial counsel. We granted Riggs' motion and remanded the case to the district court for a *Van Cleave* hearing. Following an evidentiary hearing, the same district court judge who presided over the jury trial found that Riggs' trial counsel was not ineffective in his performance at that trial.

ANALYSIS

On appeal, Riggs raises five issues, some with multiple subparts, alleging errors in the KSVPA civil commitment proceeding itself and in the decision to deny his claim of ineffective assistance of counsel. To facilitate our review of Riggs' appeal, we have reorganized and consolidated the issues presented by Riggs and will discuss each of them as part of the following three categories: (1) admissibility of evidence considered by an expert in KSVPA proceedings; (2) assertions made by the State's attorney; and (3) cumulative error.

1. *Admissibility of evidence considered by an expert in KSVPA proceedings*

The KSVPA was designed to identify SVPs and civilly commit them to potentially long term control, care, and treatment in an environment separate from persons involuntarily committed for other reasons. *In re Care & Treatment of Williams*, 292 Kan.

96, 104, 253 P.3d 327 (2011). The KSVPA, combined with the holding in *Kansas v. Crane*, 534 U.S. 407, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002), which upheld the constitutionality of the KSVPA, requires the State to prove four elements beyond a reasonable doubt in order to commit someone as an SVP:

> "(1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior. [Citations omitted.]" *In re Care & Treatment of Williams*, 292 Kan. at 106; see K.S.A. 2015 Supp. 59-29a02(a)-(e); K.S.A. 2015 Supp. 59-29a07.

Given the nature of the elements that have to be proved beyond a reasonable doubt in an SVP commitment action, the State usually relies in large part on expert testimony to establish its case. The case here is no different. The State relied on the expert opinions of Dr. Sutherland and Dr. Farr, both of whom found Riggs met the criteria for commitment under the KSVPA. Each of the experts prepared a detailed written report outlining the relevant historical information upon which he or she relied and the relevant clinical conclusions reached about Riggs. Both experts personally interviewed Riggs as part of their clinical assessments of him. In those interviews, the experts gathered historical information from Riggs and formed diagnostic impressions of him. They also reviewed court records, files from the KDOC, and other documents in arriving at their expert opinions.

During trial, the State sought to introduce—either through witness testimony or through the introduction of documents—much of the evidence upon which the experts relied in forming the opinions they provided in the case. Riggs objected, arguing the evidence was inadmissible under K.S.A. 60-460 as hearsay evidence and under K.S.A. 60-455 as evidence of prior bad acts. The district court overruled Riggs' objection but

gave a limiting instruction to the jury on the issue. On appeal, Riggs claims the district court erred (a) by overruling his objection and permitting the jury to consider inadmissible evidence; (b) by providing the jury with a legally deficient and constitutionally vague limiting instruction regarding the otherwise inadmissible evidence; and (c) by finding his trial counsel provided effective assistance in dealing with the issue of otherwise inadmissible evidence. We address each of Riggs' claims in turn.

a. *Riggs' continuing objection to introduction of inadmissible evidence*

Riggs contends much of the evidence presented by the State was inadmissible under the Kansas rules of evidence restricting use of hearsay and prior bad acts as evidence at trial. Riggs acknowledges that the district court found the evidence at issue to be admissible under K.S.A. 2015 Supp. 59-29a06(c) because it was information upon which the State's experts relied to form their opinions in a KSVPA proceeding. Riggs claims, however, that the record does not support the court's finding in this regard.

We begin our analysis with the evidentiary rules implicated here. In general, the Kansas rules of evidence govern proceedings under the KSVPA. See K.S.A. 60-402 (stating that the rules "apply in every proceeding, both criminal and civil, conducted by . . . a court, in which evidence is produced" unless otherwise provided in a "statute applicable to the specific situation"). Riggs' continuing objections to the admission of evidence were grounded in three of these evidentiary rules:  K.S.A. 2015 Supp. 60-455, which governs introduction of prior bad acts into evidence; K.S.A. 2015 Supp. 60-456, which governs expert opinion testimony; and K.S.A. 2015 Supp. 60-460, which governs introduction of hearsay into evidence. The relevant portions of these three statutes state as follows:

> "**Other crimes or civil wrongs.** (a) Subject to K.S.A. 60-447 [character trait as proof of conduct], and amendments thereto, evidence that a person committed a crime or

7

civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

"(b) Subject to K.S.A. 60-445 [discretion of judge to exclude] and 60-448 [character trait for care or skill], and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2015 Supp. 60-455.

"**Testimony in form of opinion or inferences.**

. . . .

"(b) If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if:  (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case." K.S.A. 2015 Supp. 60-456.

"**Hearsay evidence excluded; exceptions.** Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

"(a) *Previous statements of persons present.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness." K.S.A. 2015 Supp. 60-460.

Critical to our analysis here, however, the KSVPA modifies the way expert opinion testimony may be presented and received as evidence during commitment proceedings. K.S.A. 2015 Supp. 59-29a06(c). By its express terms, K.S.A. 2015 Supp. 59-29a06(c) rejects K.S.A. 2015 Supp. 60-456(b), the evidence rule governing expert testimony, to expand the sources of information experts may use in forming their opinions. K.S.A. 2015 Supp. 59-29a06(c) states, in relevant part:

8

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, such facts and data need not be admissible in evidence in order for the opinion or inference to be admitted."

Given the separate and distinct rule of evidence applicable to expert testimony in KSVPA cases, the propriety of the district court's decision regarding admissibility of the information upon which Dr. Sutherland and Dr. Farr relied turns on whether the district court properly applied K.S.A. 2015 Supp. 59-29a06(c). If Dr. Sutherland or Dr. Farr relied on the statements at issue here to form the expert opinion and the statements are typically relied on by experts in that field to form opinions on that subject, the district court did not err in permitting the State to introduce those statements.

The State called two expert witnesses to support its request to have Riggs committed. Dr. Sutherland and Dr. Farr each found Riggs to have psychological defects satisfying the criteria for commitment under the KSVPA. Each expert prepared a detailed written report outlining the relevant historical information on which he or she relied and the clinical conclusions he or she reached about Riggs. Each expert separately interviewed Riggs as part of their clinical assessments of him.

During trial, the State offered as exhibits the reports of Dr. Sutherland and Dr. Farr and the documentary materials upon which they relied. Riggs' counsel objected to the admission of certain documents as inadmissible hearsay evidence and evidence of prior bad acts. Riggs' counsel also objected when witnesses testified to statements made by A.M. and S.R. As with the documents, Riggs' objection was grounded in the notion that the testimony was inadmissible under K.S.A. 2015 Supp. 60-455 as evidence of prior bad acts and under K.S.A. 2015 Supp. 60-460 as hearsay evidence. The district court overruled the objections and permitted the State to introduce into evidence the experts' reports, the documents, and the testimony. The court noted that the State already had

9

provided notice that it intended to rely on K.S.A. 2015 Supp. 59-29a06(c), which allows expert witnesses in KSVPA proceedings to consider inadmissible evidence in forming opinions if certain conditions are satisfied. The court specifically found that the testimony of Officer Jordan and Sergeant Hall recounting the statements made by A.M. and S.R. was admissible pursuant to K.S.A. 2015 Supp. 59-29a06(c) because it was evidence that the State's experts had relied upon in forming their opinions. In support of this finding, the court noted that the expert reports—which already had been submitted to the court and to counsel by the State—specifically set forth the facts upon which the experts had relied to form the opinions they would testify to later in the trial. The district court judge explained that if the experts had not relied on the information, the testimony would be improper, but "having the benefit of having heard the testimony at the earlier trial, I know that they did rely on those things." The court allowed Riggs' counsel to assert a continuing objection for each witness testifying to otherwise inadmissible evidence and Riggs' counsel did so throughout the State's case.

On appeal, Riggs argues the record does not support the district court's finding that Dr. Sutherland and Dr. Farr relied on the documentary materials and the hearsay testimony describing the incriminating statements of sexual abuse made against him by A.M. and S.R. But contrary to Riggs' argument, both experts relied on this testimony and documentation. Officer Jordan and Sergeant Hall testified about the sexual abuse allegations A.M. and S.R. made against Riggs. A.M.'s statements to law enforcement were set forth in both the probable cause affidavit and the PSI report. Dr. Sutherland and Dr. Farr each testified that they relied on these documents in forming their opinions and conclusions about Riggs. Dr. Sutherland's clinical report referenced a police report detailing S.R.'s allegation against Riggs. Dr. Sutherland also testified that he was aware of police reports and victim statements regarding Riggs' alleged abuse of S.R. As for any portion of Jordan's or Hall's testimony relating to Riggs' confession to sexually abusing A.M. and S.R., it was admissible as substantive evidence as a previous statement of a

person present under K.S.A. 2015 Supp. 60-460(a), a party admission under K.S.A. 2015 Supp. 60-460(g), or a declaration against interest under K.S.A. 2015 Supp. 60-460(j).

Although not cited by Riggs in support of his objection at the district court, Riggs complains on appeal that the district court improperly permitted the State's expert witnesses to imply to the jury that he was a liar. But Riggs' argument completely mischaracterizes the nature of this testimony and provides no support for his claim that the State's evidence constituted inadmissible hearsay and/or was improperly admitted under K.S.A. 2015 Supp. 59-29a06(c). The testimony Riggs challenges involves opinion testimony about statements Riggs made that either denied or minimized his sexually violent behavior. This evidence was directly relevant to two elements at issue in the commitment proceeding: whether Riggs had serious problems controlling his behavior and whether Riggs was likely to engage in future sexually violent behavior. See K.S.A. 2015 Supp. 59-29a02(a); K.S.A. 2015 Supp. 59-29a07(a); *In re Care & Treatment of Williams*, 292 Kan. 96, Syl. ¶ 3. Indeed, Dr. Sutherland specifically relied on Riggs' "tendency to minimize and justify his behavior" and Riggs' denial of certain sex offenses as a basis for his opinion that Riggs would have serious problems controlling his behavior and that Riggs needed further treatment. And Dr. Farr testified that Riggs' minimization of certain events was "a red flag" for committing future acts of sexual aggression. Thus, testimony about Riggs' denial or minimization of his actions was properly admitted as a basis for the experts' opinions.

Based on the discussion above, we find the testimony and documentation challenged by Riggs was either independently admissible as substantive evidence or was sufficiently tied to the experts' opinions and was therefore properly admitted under K.S.A. 2015 Supp. 59-29a06(c). The district court did not err in allowing this evidence to be introduced.

11

b. *Limiting instruction regarding otherwise inadmissible evidence*

The parties agreed to use the jury instructions from the previous trial, including a limiting instruction (instruction number 12) regarding the jury's limited use of otherwise inadmissible evidence considered by expert witnesses:

> "Information identified by each expert witness concerning other incidents involving Mr. Riggs was not presented to show that the incident occurred or that the information was accurate. The information is presented to the jury for the limited purpose of showing how the information was used as a basis for the expert's opinion."

On appeal, Riggs claims the instruction was deficient because it did not address all of the inadmissible hearsay admitted into evidence and because it was too vague to guide the jury in analyzing this evidence. But trial counsel did not object to the limiting instruction. Without an objection, Riggs can only claim error if the instruction at issue is clearly erroneous. K.S.A. 2015 Supp. 22-3414(3); *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). An appellate court uses a two-step process to determine whether the challenged instruction was clearly erroneous. First, the court must determine whether there was any error at all by considering whether the instruction was both legally and factually appropriate, employing an unlimited review of the entire record. If the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014).

We first address Riggs' claim that the instruction failed to address all of the inadmissible hearsay admitted into evidence. Specifically, Riggs asserts that because the instruction referred only to "[i]nformation identified by each expert witness," it excluded the incriminating statements of A.M. and S.R. that were presented to the jury through the testimony of Officer Jordan and Sergeant Hall. As such, Riggs argues the jury was never instructed that it was only permitted to consider the statements of A.M. and S.R. for the

limited purpose of evaluating the experts' opinions and not as substantive evidence to determine whether he should be committed as an SVP. But as noted above, the record reflects that the experts relied on the incriminating statements of sexual abuse made by A.M. and S.R. as set forth in the probable cause affidavit and the PSI report; therefore, the testimony provided by Jordan and Hall relating these statements to the jury was sufficiently tied to the experts' opinions and properly admitted under K.S.A. 2015 Supp. 59-29a06(c). And even if the statements were not sufficiently tied to the experts' opinions and the instruction was legally deficient, we would not deem the instruction clearly erroneous because the information in the victim statements largely duplicated the information Riggs admitted when he was interviewed by Jordan and Hall. Moreover, defense counsel made clear in his closing argument that the jury was only permitted to consider the statements of A.M. and S.R. for the limited purpose of evaluating the experts' opinions and not as substantive evidence to determine whether Riggs should be committed as an SVP:

"Now, Instruction No. 12, and this is another one that's very important in the case. There has been information in this case identified by each expert witness concerning other incidents which involved Mr. Riggs, and they were not present[ed] to show that the incident occurred or that the information was accurate. The information presented to the jury is presented to the jury for the limited purposes of showing how the information was used as a basis for the expert's opinion.

"Throughout the trial, I'm sure you heard that [*sic*] was evidence that came in where the expert said they relied on this information to form a basis of their opinion, or to produce their [*sic*] report. Well, what this does—it tells you is that that was not presented to show that it actually occurred or that the information was accurate. Please keep that in mind."

Riggs next claims that the limiting instruction's reference to "other incidents" was too vague. However, a limiting instruction relating to evidence admitted under K.S.A. 2015 Supp. 59-29a06(c) is necessarily broad because it can refer to many different

13

incidents. Riggs cites no authority to support his assertion that a limiting instruction in this context must specifically refer to each individual incident to which it applies. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013).

In sum, the limiting instruction was not legally deficient, and even if it was, we are not firmly convinced the jury would have reached a different verdict without the legal deficiency. See *Clay*, 300 Kan. at 408.

c. *Ineffective assistance of counsel*

Next, Riggs argues that trial counsel was ineffective in two respects: (1) by failing to challenge the constitutionality of K.S.A. 2015 Supp. 59-29a06(c), and (2) by failing to move for a mistrial based on the State's failure to show that any expert relied on Officer Jordan's testimony or reports as required by K.S.A. 2015 Supp. 59-29a06(c).

The constitutional right to assistance of counsel in KSVPA proceedings also contains a right to competent, effective counsel. *In re Care & Treatment of Ontiberos*, 295 Kan. 10, Syl. ¶¶ 1-2, 287 P.3d 855 (2012). To prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that defense counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed by the Sixth Amendment to the United States Constitution, and (2) that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence

14

before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with "a reasonable probability" meaning a probability sufficient to undermine confidence in the outcome. *Miller*, 298 Kan. at 934.

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. Consequently, appellate courts review the underlying factual findings for support by substantial competent evidence and the legal conclusions based on those facts de novo. *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014).

(1) *Failing to challenge constitutionality of K.S.A. 2015 Supp. 59-29a06(c)*

Riggs argues that trial counsel was ineffective for failing to argue that K.S.A. 2015 Supp. 59-29a06(c) violated the Equal Protection Clause of the United States Constitution by establishing a different rule of evidence for SVP cases than for other cases.

In ruling on this issue below, the district court cited to this court's holding in *In re Care & Treatment of Wright*, No. 110,539, 2015 WL 3868646 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. 1009 (2015), to hold that counsel in this case was not ineffective for failing to the challenge the constitutionality of K.S.A. 2015 Supp. 59-29a06(c). In *Wright*, the appellant raised the same argument as Riggs, alleging that K.S.A. 2014 Supp. 59-29a06(c) violated the Equal Protection Clause and that his attorney was ineffective for failing to raise such a claim. In order to determine whether it was unreasonable for the appellant's counsel not to raise the constitutional issue, the panel first addressed whether the claim would have been successful. To that end, the panel employed the following three-step process in reviewing whether K.S.A. 2014 Supp. 59-29a06(c) violated equal protection principles:  (1) courts first consider whether the statute

15

creates a classification resulting in different treatment of similarly situated individuals; (2) if the statute does treat "'arguably indistinguishable classes of individuals'" differently, then courts examine the nature of the classification or right at issue to determine the appropriate level of scrutiny; and (3) courts apply the appropriate level of scrutiny to the statute. 2015 WL 3868646, at *6.

Under the first step of this analysis, the *Wright* panel found that K.S.A. 2014 Supp. 59-29a06(c) appears to treat two similarly situated groups differently because it clearly creates a special evidentiary rule applicable only to SVP proceedings and not to other civil commitment proceedings. But the panel concluded that because the Kansas Legislature has recognized that SVPs have special treatment needs and present special risks to society, subjecting those individuals to treatment and confinement conditions that differ from those of other civilly committed persons did not violate equal protection principles. 2015 WL 3868646, at *7.

Notwithstanding the appellant's failure to establish that there is no difference between SVPs and other civilly committed persons, the panel went on to address the remaining steps of the equal protection analysis. With respect to the second step, the panel found that K.S.A. 2014 Supp. 59-29a06(c) is subject to a rational basis review because SVPs are not a suspect class, like race or national origin. Thus, "a law that treats SVPs differently from other individuals 'will be constitutional if the classification bears a rational relationship to a legitimate government objective.'" 2015 WL 3868646, at *7.

Under the third step, the panel noted the legislative reasoning for enacting K.S.A. 2014 Supp. 59-29a06(c): "(1) decreasing costs and increasing efficiency, and (2) protecting society by preventing the SVPs' victims from being revictimized by repeatedly presenting the same testimony and by ensuring that SVPs who outlive their victims can remain committed." 2015 WL 3868646, at *7. The panel determined that these factors relate to the overall goal of the KSVPA: "''to address the special needs of sexually

16

violent predators and the risks they present to society"' that went unaddressed by the State's other civil commitment procedures." 2015 WL 3868646, at \*7. The panel held that because K.S.A. 2014 Supp. 59-29a06(c) is rationally related to the overall goal of the KSVPA, the mere fact that it treats SVPs differently from other civilly committed persons does not violate the Equal Protection Clause. As a result, the panel concluded that the appellant's trial counsel was not ineffective for failing to raise this issue because it would not have been successful. 2015 WL 3868646, at \*8.

Riggs acknowledges the holding in *Wright* but argues that it was wrongly decided for several reasons. First, Riggs claims that the legitimate governmental interests identified in *Wright* were not the legislature's actual reasons for enacting K.S.A. 2015 Supp. 59-29a06(c). Riggs claims the statute was enacted to make it easier to prosecute SVPs, which constitutes purposeful discrimination. But the United States Constitution does not require a legislature to articulate its reasons for enacting a statute, so "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature*." FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993); see *Downtown Bar and Grill v. State*, 294 Kan. 188, 195, 273 P.3d 709 (2012) ("'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'").

Riggs also argues that the *Wright* panel ignored the fact that SVPs are treated differently than all other Kansas litigants, not just other civilly committed persons. But this argument does nothing to change the holdings in *Wright* that (1) SVPs have special treatment needs and present special risks to society, so subjecting SVPs to different treatment and confinement conditions does not violate equal protection principles, and (2) K.S.A. 2015 Supp. 59-29a06(c) is rationally related to the overall goal of the KSVPA.

17

Finally, Riggs alleges there is no evidence to support *Wright's* stated policy reasons for enacting K.S.A. 2015 Supp. 59-29a06(c). But "'"[a] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."' [Citations omitted.]" *Downtown Bar and Grill*, 294 Kan. at 198.

*Wright*'s well-reasoned analysis is readily applicable to this case. K.S.A. 2015 Supp. 59-29a06(c) does not violate the Equal Protection Clause. Under these circumstances, substantial competent evidence supports the district court's legal conclusion that Riggs' trial counsel cannot be considered ineffective for failing to raise this issue below.

(2) *Failing to request a mistrial*

Riggs also argues that trial counsel was ineffective by failing to move for a mistrial. Riggs claims that because no expert relied on Officer Jordan's testimony or reports, this testimony was improperly admitted and thus warranted a mistrial.

Although Riggs raised this argument below, the district court's decision did not specifically address it. But we may presume that the court ruled against Riggs on this issue, given its ruling that counsel's representation was not deficient in any way and "fell well within the boundaries of competent counsel."

Contrary to Riggs' argument, the State did sufficiently tie Officer Jordan's testimony to the expert opinions. As stated earlier, Jordan testified about the sexual abuse allegations A.M. and S.R. made against Riggs. Both experts testified that they relied on certain court records and documents to form their opinions, including the probable cause affidavit and PSI report in A.M.'s case. And Dr. Sutherland's clinical report referenced a police report detailing S.R.'s allegations.

As noted by the district court, trial counsel "was quite diligent in making objections to the testimony of the fact witnesses, including Officer Jordan, the investigating officer who related the incriminating statements made to Jordan concerning [Riggs'] sex offenses, as well as objecting to virtually every bit of expert testimony concerning Mr. Riggs' medical and psychiatric status offered by the State."

Because a mistrial was not warranted based on the State's failure to establish the experts' reliance on the information contained in Officer Jordan's testimony, Riggs has failed to show that trial counsel's failure to move for a mistrial was deficient performance.

## 2. *Comments made by the State's attorney*

Riggs argues he did not receive a fair trial because the State's attorney made comments to the court misrepresenting the legal basis for admission of certain testimony and because the State's attorney improperly commented on his credibility to the jury. Riggs asserts the proper standard of review for his claim is the one used in criminal cases for claims of prosecutorial misconduct. But "complaints of prosecutorial misconduct, common in our criminal jurisprudence, are inappropriate in sexually violent predator proceedings" and, thus, the two-step analysis used in criminal cases to judge alleged instances of prosecutorial misconduct claims is inapplicable in SVP proceedings. *In re Care & Treatment of Ontiberos*, 45 Kan. App. 2d 235, 247, 247 P.3d 686 (2011), *aff'd* 295 Kan. 10, 287 P.3d 855 (2012). Rather, the primary consideration for a court reviewing comments made by counsel during an SVP proceeding is whether the comments deprived the respondent of a fair trial. 45 Kan. App. 2d at 247-48.

a. *Misrepresenting legal basis for admission of testimony*

Riggs alleges that the State misrepresented the legal basis for the admission of Officer Jordan's and Sergeant Hall's testimony. Riggs contends that the State first argued the testimony was admissible under K.S.A. 2015 Supp. 59-29a06(c) as information upon which the experts had relied to form their opinions but then later argued that the testimony could be considered as substantive evidence.

It is true that the State's attorney responded to Riggs' hearsay objections by invoking K.S.A. 2015 Supp. 59-29a06(c). Later, during closing argument, the attorney for the State explained that the limiting instruction allowed for the introduction of certain information not for the truth of the matter asserted but only to consider whether the experts had properly relied on the information as a basis for their opinions. The State's attorney then said that this instruction did not apply to Officer Jordan's and Sergeant Hall's testimony about Riggs' confession to sexually abusing A.M. and S.R. because it was direct evidence offered for the truth of the matter asserted.

Riggs suggests that the State misrepresented the basis for the admissibility of this testimony in order to keep it from being excluded, or changed the reason for its admission in order to avoid a mistrial after it became clear that the expert witnesses did not rely on the testimony. Riggs' argument is without merit. As previously discussed, the experts did rely on the information contained in Officer Jordan's and Sergeant Hall's testimony, so it was admissible, in part, under K.S.A. 2015 Supp. 59-29a06(c). Additionally, the portions of the testimony relating to Riggs' confession was admissible as substantive evidence under multiple hearsay exceptions. See K.S.A. 2015 Supp. 60-460(a) (previous statement of a person present); K.S.A. 2015 Supp. 60-460(g) (party admission); K.S.A. 2015 Supp. 60-460(j) (declaration against interest). Thus, the State's argument that Jordan's and Hall's testimony was admissible both under K.S.A. 2015 Supp. 59-29a06(c) and as substantive evidence was correct and did not deprive Riggs of a fair trial.

b. *Improperly commenting on Riggs' credibility*

Riggs also asserts that the State's counsel also deprived him of a fair trial by making improper comments about his credibility.

During the State's closing argument, the attorney stated:

"You got a jury instruction about the credibility of witnesses. When asked about the letter to his mom, you know, how do we know that she really received it? You will just have to trust me, he says. You'll just have to trust me.

"He said today that he wants to do this, he's not going to re-offend, he's going to follow all these rules. You just have to trust him. Take that in conjunction—remember what he was like at the real beginning of the case when he was first confronted by the case against [A.M.] and he confesses what he really did with [S.R.] and he can't deal with it. He still hasn't dealt.

. . . .

"He has no [disciplinary reports] and no sexual acting out during prison in the last seven years. Yes, ladies and gentlemen, because he's in the controlled environment of prison. Well, he's had no deviant sexual fantasy that we know of. Ladies and gentlemen, that is only as credible as what the defendant—as what the respondent self reported. Is that one more area where you just have to trust him on that—on the fantasies?"

Riggs argues that the statements by the State's attorney intended to convey to the jury that he was lying. In criminal cases, a prosecutor may not offer his or her personal opinion as to the credibility of a witness. *State v. Armstrong*, 299 Kan. 405, 427, 324 P.3d 1052 (2014). Directly or indirectly accusing a defendant of lying is outside the wide latitude afforded to prosecutors in closing argument. See *State v. Elnicki*, 279 Kan. 47, 62, 105 P.3d 1222 (2005); *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000). Nevertheless, a prosecutor is free to craft an argument that includes reasonable inferences to be drawn from the evidence. See 268 Kan. at 507. That latitude would include

explaining to the jury what it should look for in assessing witness credibility. See *State v. King*, 288 Kan. 333, 352-53, 204 P.3d 585 (2009).

Here, the State's attorney did not directly or indirectly accuse Riggs of lying. The evidence at trial presented the jury with conflicting evidence on whether Riggs should be committed as an SVP. Considering the comments in the context of the State's entire argument and the conflicting evidence presented at trial, it appears the State's attorney was simply making clear that it was the jury's job to assess Riggs' credibility in light of all the evidence presented. As noted above, explaining to the jury what it should look for in assessing witness credibility is within the wide latitude afforded counsel in discussing the evidence. See *King*, 288 Kan. at 352. Riggs has failed to establish that the comments made by the State's attorney in any way deprived him of a fair trial.

3. *Cumulative error*

Finally, Riggs contends that the cumulative effect of the errors alleged above deprived him of a fair trial. But when the record fails to support the errors raised on appeal, a claim of cumulative error cannot succeed. *In re Care & Treatment of Miller*, 289 Kan. 218, 231, 210 P.3d 625 (2009). Because no errors of any substance occurred in Riggs' proceedings, the cumulative error doctrine does not apply.

Affirmed.