No. 98,105

In the Matter of the Care and Treatment of JOHN COLT.

(211 P.3d 797)

Opinion filed July 10, 2009.

*Michael M. Jackson,* of Topeka, argued the cause and was on the brief for appellant.

*Stephen R. McAllister,* solicitor general, argued the cause, and *Nola F. Wright,* assistant attorney general, and *Paul J. Morrison,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This is an appeal from respondent John Colt's indefinite civil commitment as a sexually violent predator under K.S.A. 59-29a01 *et seq.* (the Act). He argues that his jury should not have been permitted to consider evidence of his prior crimes, particularly those that had no sexual component; that the State's expert based his opinion on inadmissible evidence in violation of K.S.A. 60-456(b); and that the evidence was insufficient to support the jury's verdict.

We affirm.

This proceeding followed from Colt's 2001 conviction of one count of aggravated sexual battery and one count of aggravated burglary, arising from his unlawful entry into his neighbor's apartment and ensuing attempted rape. In this proceeding, Colt filed a motion in limine to preclude the State from offering evidence of Colt's 1997 convictions for forgery and theft; a 1997 conviction for battery; a 1997 conviction for battery on a law enforcement officer; a 1996 conviction for theft of property valued at less than $500; two 1995 convictions for disorderly conduct; a 1995 conviction for criminal damage; a 1994 conviction for battery; a 1994 conviction for unlawful deprivation of property; a 1993 conviction for unlawful deprivation of property; 1993 convictions for theft and burglary; 1991 convictions for battery and criminal damage; and Kansas Department of Corrections disciplinary reports from 1998 through

2004. The district judge denied Colt's motion as to all of the prior convictions, noting the State's expert witness had relied upon them. The district judge also determined that the probative value of evidence of the convictions outweighed any prejudicial effect. The district judge granted Colt's motion as to the disciplinary reports.

Before trial, the parties stipulated to Colt's 2001 aggravated sexual battery and aggravated burglary convictions and

"[t]o the foundation of [Colt's] medical and mental health reports/records, criminal history, court records, sex offender treatment records, department of corrections institutional file, Larned State Security Hospital, and other files relied upon by the [State's] and/or [Colt's] witness[es] in their evaluations and opinions, designated as State's exhibit #3 for identification purposes."

At trial, clinical psychotherapist Rex Rosenberg testified for the State, explaining that Colt's criminal history played a significant role in his evaluation. Rosenberg provided the jury with a list of Colt's prior crimes:

"In terms of the convictions, . . . there was a conviction for battery and criminal damage to property under $500 . . . theft under $500, theft over $500 and a burglary of a motor vehicle[,] aircraft or other means of conveyance . . . deprivation of property, . . . battery, . . . criminal damage to property over $500, . . . disorderly conduct, . . . theft under $500, . . . battery against a law enforcement officer, . . . he was arrested for indecent liberties with a minor . . . .
"two counts of forgery and two counts of theft less than $500 . . . possession of a forged instrument, . . . battery, and . . . theft over $500 . . . ."

Rosenberg also described the documents he reviewed before interviewing Colt:

"This was [Colt's] fifth admission to State Security Hospital. So, I had all five files from the previous admissions. Now, in those files, it would be pre-admission information, admission intake assessments, the forensic evaluations that had been done previously, no indications of anticipated release related to this particular evaluation. There would be evaluations from the Department of Corrections, Sex Offender Treatment Program, discharge summary, presentence investigations, Kansas Criminal History Worksheets, complaints, journal entries from the Court, affidavits, Personal Maintenance Program Contract, Department of Corrections evaluation qualification report, presentence investigation, some psychiatric notes, corrections counselor progress notes[,] information from a previous hospitalization . . . Adolescent Treatment Program, discharge summary, health center nursing evaluation . . . psychiatric rating scale St. Margaret Health Center,

nurse's discharge records, counselor progress note, psychiatric notes, more psychiatric counsel notes, more counsel notes, Wyandotte Mental Health discharge summary, psychiatric evaluation from February 1987, Missouri Department of Mental Health psychiatric assessment, a discharge summary from the Wyandotte Health Center summary from 1989, the Missouri Department of Mental Health summary discharge 1988, youth progress report from Youth Center of—1994 Center of Topeka, pre-release progress notes from 1996, Shawnee Medical discharge summary from February 2001, summary from August 1991, Leavenworth County, complaint, a progress supporting affidavit, . . . victim impact statement dated April 1987 and 1988, victim standard report assessment from March 1997, a narrative report prepared by police, a voluntary statement from March 1997, more information with regards to forged checks, another voluntary statement."

## Rosenberg also expanded on the contents of certain records:

"[A note from the] Osawatomie State Hospital[] indicated he reported to have put a cat in the microwave and had killed a family dog by throwing rocks at the --a report from Providence St. Margaret Health Center in 1992 indicated that was his first admission as a 14 year old because of the suicidal threat. He had been jailed for auto theft. He was arrested at that time for automobile larceny and a high speed chase . . . he had six auto theft charges with more to be prosecuted. The patient admitted to truancy, running away, smoking, noncompliance—stated he stole cars for joyrides . . . . The Youth Center of Topeka—at age 16, that happened—following three counts of misdemeanor criminal deprivation of property, he and some friends were drunk one night. And then at age 17, [Colt] was admitted to Topeka State Hospital for five months as a result of fighting in school, breaking into a house, and being kicked out of group homes. At age 12, he phoned the police and told them he was going to shoot his father. . . .

". . . He was admitted to the Western Missouri Mental Health facility following a long history of behavioral problems starting at the age of three, that included fear, setting—destruction of property, fighting, illegal and cruelty to animals. Those are some of the documents I have reviewed."

Rosenberg further testified that Colt had acknowledged during interviews that thoughts of rape sexually stimulated him. Colt had said that, within 5 minutes of being placed in jail in the 2001 case, "he masturbated to fantasies of what could have happened." Colt had also admitted to sodomizing a prostitute. Rosenberg also administered two screening tests to Colt.

Rosenberg diagnosed Colt with Paraphilia Not Otherwise Specified; alcohol dependence; partial sustained remission in a controlled environment; cannabis dependence; impartial sustained remission in a controlled environment; and antisocial personality

disorder. Rosenberg opined that Colt has serious difficulty controlling his behavior and would be at a high risk to commit a future sex offense.

Colt appealed his commitment to our Court of Appeals, which affirmed. We granted his petition for review.

### Admission of Evidence of Prior Crimes

There are two parts to Colt's argument on this point. Like the respondent in *In re Care & Treatment of Miller*, 289 Kan. 218, 210 P.3d 625 (2009), he contends that broad language in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), applies and dictates reversal under K.S.A. 60-455. He also contends that evidence of prior crimes with no sexual component was irrelevant, and that its admission undermines the constitutionality of the Act.

### *Gunby*

The merit of and outcome on this argument by Colt is controlled by our decision today in *Miller*, 289 Kan. at 225-27. As we said there, the broad language in *Gunby* regarding K.S.A. 60-455 analysis must be circumscribed in light of our earlier decision in *In re Care & Treatment of Hay*, 263 Kan. 822, 953 P.2d 666 (1998), and *In re Care & Treatment of Crane*, 269 Kan. 578, 7 P.3d 285 (2000) *vacated on other grounds* 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002), sexually violent predator commitment cases. In *Crane*, we stated:

" 'We are hard-pressed to see how [prior bad acts] can be prohibited by K.S.A. 60-455 [in sexually violent predator cases] when it is an essential element of the required proof and necessary for the decision-making process of the jury.' [Citation omitted.]

. . . .

"[E]vidence of prior conduct [is] material to the question of likelihood that the respondent would engage in repeat conduct as well as to the element of conviction of prior conduct." *Crane* 269 Kan. at 591-92.

Our *Miller* decision recognizes that *Gunby* "did not discuss the unique nature of commitment proceedings under the Act. [It] focused only on K.S.A. 60-455 and common-law interpretations and applications of it in the setting of criminal trials." 289 Kan. at 225.

Neither K.S.A. 60-455 nor *Gunby* governs admission of prior crimes evidence in sexually violent predator commitment proceedings such as Colt's.

Nonsexual Priors

The second part of Colt's challenge to admission of evidence about his prior crimes concerns those lacking a sexual component. Again, we took up at least the relevance aspect of the same question in *Miller*, 289 Kan. at 227-29.

" 'Relevant evidence' means evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). "The concept of relevance under Kansas law includes both whether evidence is probative and whether it is material." *State v. Vasquez*, 287 Kan. 40, 50, 194 P.3d 563 (2008). We review whether evidence is probative under an abuse of discretion standard and whether it is material under a de novo standard. See *Vasquez*, 287 Kan. at 50. A district judge's determination on whether certain evidence is unduly prejudicial is reviewed for abuse of discretion. *State v. Reid*, 286 Kan. 494, 507-08, 186 P.3d 713 (2008).

As we discussed fully in *Miller*, 289 Kan. 228, nonsexual prior crimes of a respondent in a sexually violent predator commitment proceeding may be both probative and material of certain diagnoses and behavior patterns. We have no hesitancy to rule that Colt's complete criminal history helped to explain Rosenberg's diagnoses here.

Colt also argues that it was impossible for the district judge in this commitment proceeding to make a valid call on relevance without knowing more about the facts of Colt's prior crimes. This argument misses the point. Given Colt's diagnosis of antisocial personality disorder, which covers persons whose behavior includes a pervasive pattern of disregard for and violation of the rights of others, see American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders § 301.7, p. 701 (4th ed. rev. 2005), the mere fact of Colt's many prior convictions over several years was both probative and material. The Act requires a person identified as a sexually violent predator to suffer from a mental

abnormality. See K.S.A. 59-29a02(a). Colt's criminal history was persuasive evidence of one of the principal markers of his malady.

Colt's other relevance argument — that K.S.A. 59-29a03 explicitly limits the types of offenses about which evidence can be admitted in a sexually violent predator commitment proceeding and that his prior crimes are not among them — requires statutory interpretation. We review a district judge's interpretation of statutes de novo and rely exclusively on the plain language of the text unless it is unclear or ambiguous. See *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008) (de novo review); *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007) (plain language).

Colt's argument is wholly without merit. The enumerated crimes to which Colt makes reference are listed in K.S.A. 59-29a02(e), which defines the phrase "sexually violent offense." That phrase is used in the Act as a descriptor for the types of crimes that may motivate the State to seek commitment in the first place, see K.S.A. 59-29a03(a)(1), (2), (3), (4), not as a descriptor for the types of crimes that may be used to determine the remainder of a person's qualifications for the label of "sexually violent predator," *e.g.*, a mental abnormality or personality disorder. See K.S.A. 59-29a02(a). K.S.A. 59-29a03 does not address the presentation of evidence in the trial of a commitment petition at all.

The district judge did not err in rejecting Colt's effort to exclude proof of his prior crimes on relevance grounds.

Constitutionality

As mentioned, Colt also makes an argument that "admission into evidence of all other crimes or civil wrongs undermines the constitutionality of the . . . Act." His support for this statement is almost fatally concise:

"These proceedings do not violate double jeopardy concepts because they are civil actions designed not as punishment for ordinary criminals but those individuals suffering from a mental illness who is '[l]ikely to engage in repeat acts of sexual violence.' To allow all prior convictions would allow propensity evidence not of sexual violence but of being a criminal recidivist. *Kansas v. Crane*, 534 U.S. 407 [, 151 L. Ed. 2d 856, 122 S. Ct. 867] (2002), requires that the application of the Sexual Predator Act distinguish 'the dangerous sexual offender whose serious

'mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.' "

This passage from Colt's brief, repeated in his petition for review, appears to assert that the only thing saving the Act from invalidity under constitutional double jeopardy doctrine is its differentiation between persons who are dangerous because they are criminals at all from persons who are dangerous because they are criminals with mental disorders that make them candidates to commit future violent sex offenses. This is not what the United States Supreme Court has said. Although *Crane* did emphasize that our statutory scheme enabling indefinite civil commitment of sexually violent predators must require proof of a respondent's "special and serious lack of ability to control behavior," 534 U.S. at 412-13, that requirement arises out of substantive due process rather than double jeopardy concerns. *Crane*, 534 U.S. at 409 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356, 360, 138 L. Ed. 2d 501, 117 S. Ct. 2072 [1997]).

Regardless, Colt's constitutional argument is unpersuasive. This is a civil and not a criminal proceeding. See *Hendricks*, 521 U.S. at 369; see also *Hay*, 263 Kan. at 830 (double jeopardy not at issue in civil cases). Further, this is not a case in which the State chose to pursue commitment under the Act based solely on a respondent's nonsexual prior crimes; such an approach would run afoul of the high court's limits on the Act's constitutional interpretation. See *Crane*, 534 U.S. at 412-13. Here, the State went far beyond reliance on Colt's long nonsexual rap sheet. It began by stipulating to his sexually violent offense of aggravated sexual battery, and it continued with its expert's testimony about Colt's interviews, test results, and diagnoses. Although Colt's criminal history, including all of his nonsexual prior crimes, formed a part of the evidence against him, it was only a part.

*K.S.A. 60-456(b)*

Colt also challenges Rosenberg's reliance on records regarding his criminal history based on K.S.A. 60-456(b) and our decision in *State v. Gonzalez*, 282 Kan. 73, 145 P.3d 18 (2006). Because an expert may base an opinion only on "facts or data perceived by or

personally known or made known to the witness at the hearing," K.S.A. 60-456(b), and because Colt's prior convictions were admitted into evidence solely because they undergirded Rosenberg's opinion, the statute was, in Colt's view, violated. The State responds that the parties stipulated to the foundation for the criminal history records and that K.S.A. 60-460(r) provides a hearsay exception for judgments of previous convictions.

In this case, the records on Colt's criminal history were authenticated when the parties stipulated to their foundation. That does not end our inquiry under 60-456(b), however, as our *Gonzalez* decision explained regarding certain California records on which expert Carolyn Huddleston relied to form her psychological opinion for a competency hearing:

"K.S.A. 60-456(b) . . . precludes an expert witness in Kansas from giving an opinion based on facts or data not 'perceived by or personally known or made known' to the expert at trial or, as in this case, at a competency hearing.

"[Huddleston's] opinion regarding defendant's competency, insofar as it depended on the California records, was not based on 'facts or data perceived by or personally made known' to [Huddleston] because her awareness of those facts or data was not attained through her own senses. Further, the phrase 'at the hearing' refers to facts put in evidence. *State v. Strauch*, 239 Kan. 203, Syl. ¶ 4, 718 P.2d 613 (1986); *Casey v. Phillips Pipeline Co.*, 199 Kan. 538, 546, 431 P.2d 518 (1967). In this case, defense counsel never offered the California records for admission under one of the exceptions to the hearsay rule, and those records were never admitted except as an appellate exhibit by the trial court. The letter from the custodian of the records was properly rejected by the trial court because neither the records nor the letter was properly authenticated. Because the California records were never admitted into evidence at the competency hearing, that portion of Dr. Huddleston's opinion which was based on the California records was not based on facts or data personally made known to the witness 'at the hearing.'

"K.S.A. 60-456(b) differs from its federal counterpart, Rule 703 of the Federal Rules of Evidence. . . . As noted in 4 Vernon's Kansas C. Civ. Proc. § 60-456(b), Author's Comments (2005 Supp.): 'The rationale of the Federal Rule is that judicial practice should be brought in line with the practice of experts themselves when not in court, who, in the case of physicians, may make life and death decisions on the basis of hearsay statements.'

"Under the federal rule, . . . if it is the customary practice in the expert's specialty to consider reports from nontestifying third parties in formulating an opinion, the expert's testimony may be based on such reports. Under such circumstances, however, evidence of the report is not admitted as substantive proof of the report's truth but for the limited purpose of showing the basis of the expert's

opinion. Consequently, upon request, the opposing party is entitled to a limiting instruction by the trial judge. See Imwinkelried, Evidentiary Foundations § 9.03(4)(c) (6th ed. 2005).

"In contrast to the federal rule, Kansas has adopted the traditional approach to the question whether an expert may rely on reports from third parties, such as other experts, if the reports do not fall within any hearsay exception. Under the Kansas rule, experts' opinions based upon hearsay are not admissible in any court proceedings. See *In re Care & Treatment of Foster*, 280 Kan. 845, Syl. ¶ 9, 127 P.3d 277 (2006). Because the California records were not qualified and admitted under one of the exceptions to the hearsay rule, the records themselves remained inadmissible hearsay upon which Dr. Huddleston could not base her opinion that defendant was incompetent to stand trial." *State v. Gonzalez*, 282 Kan. at 87-88.

The State urges us to overcome any hearsay problem with the records Rosenberg relied upon by looking to K.S.A. 60-460(r), an exception allowing admission of final judgments "adjudging a person guilty of a felony." We do not have the records themselves before us, but we need not follow the path the State suggests. Our review reveals that the parties not only stipulated to their foundation but also agreed that the records' admission was unnecessary, as concerns about their content could "be appropriately addressed simply by asking [Rosenberg] to refer specifically to the specific record if he has testified about something that he claims is from the record." Admission of unreliable statements by out-of-court declarants to prove the truth of the matter asserted is exactly what the hearsay rule is designed to prevent; this agreement appears to have eliminated any useful purpose our enforcement of the rule might serve; waived any initial objection to the Rosenberg's reliance on and reference to the records; and, to the extent admission of his opinion was error, invited it. See *State v. Murray*, 285 Kan. 503, 522, 174 P.3d 407 (2008) (invited error no basis for relief on appeal).

## Sufficiency of the Evidence

The State's burden under the Act is proof beyond a reasonable doubt. See K.S.A. 59-29a07(a). Our standard of review asks whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced a reasonable factfinder

could have found the State met its burden to demonstrate Colt is a sexually violent predator. See *Hay*, 263 Kan. at 842.

The sufficiency question is not a close one on the facts in this record. Rosenberg's diagnoses of Colt included the mental abnormality of Paraphilia Not Otherwise Specified. The admitted documentary evidence included a handwritten "SEXUAL HIS[tory] from Colt, which discussed his childhood and adult sexual experiences and expressed escalating hostility toward women, including a plan to go on a 'raping spree.' " The evidence before the jury was more than sufficient under even the demanding reasonable doubt standard.

Affirmed.

McFARLAND, C.J., not participating.

STANDRIDGE, J., assigned.

ROSEN, J., dissenting: I respectfully dissent for the reasons stated in my dissenting opinion in *In re Care & Treatment of Miller*, 289 Kan. 218, 210 P. 3d 625 (2009).

STANDRIDGE, J., joins in the foregoing dissent.