NOT DESIGNATED FOR PUBLICATION

No. 117,537

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
CHARLES D. KEARNEY.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WILLIAM P. MAHONEY, judge. Opinion filed July 13, 2018. Affirmed.

*Christopher Cuevas*, of Kansas City, for appellant.

*Bryan C. Clark*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and MALONE, JJ.

PER CURIAM: Charles D. Kearney appeals his involuntary, civil commitment as a sexually violent predator under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 2017 Supp. 59-29a01 et seq. Kearney claims there was insufficient evidence presented at the bench trial to establish that he was a sexually violent predator. He also claims his constitutional and statutory rights to a speedy trial were violated. For the reasons stated herein, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We will begin by summarizing Kearney's adult criminal history. In the summer of 2000, when Kearney was 18 years old, he attempted to make an illegal gun sale, but things did not go as planned. The purchaser tried to steal the gun from Kearney and a

1

struggle ensued. During the struggle, the gun went off, killing the purchaser. Kearney pled guilty to involuntary manslaughter and unlawful possession of a firearm, and the district court initially placed Kearney on probation for this conviction.

While on probation in 2001, Kearney coerced his then-girlfriend's six-year-old daughter to perform oral sex on him. When later asked by a psychologist why he did this, Kearney said, "I was feeling horny and needed to have an orgasm." After being caught, Kearney pled no contest to aggravated indecent liberties with a child, and the district court sentenced him to a 131-month prison term.

In 2010, Kearney was released on parole. He first violated his parole in 2013 for failure to report and for domestic abuse. After serving a six-month jail sentence, he was released back on parole. In 2013, he again violated his parole by being unsuccessfully discharged from his drug counseling and by exposing himself to a group of women. As a result of this latest violation, Kearney was sentenced to another six months in jail.

Before Kearney's release, the State filed a petition on January 21, 2014, seeking to have Kearney deemed a sexually violent predator under the KSVPA and to have him involuntarily committed. On January 29, 2014, the district court found probable cause that Kearney was a sexually violent predator. The district court transferred Kearney to Larned State Hospital for further evaluation.

From there, the commitment proceedings progressed slowly. The State requested several continuances because of difficulty obtaining expert evaluations. Kearney's counsel also requested continuances as he had his own difficulties obtaining an expert evaluation. Meanwhile, Kearney filed a pro se motion to dismiss, and he also filed two pro se writ of habeas corpus motions. In all the motions, Kearney asserted that his statutory speedy trial rights, among other vague constitutional rights, had been violated.

On March 24, 2015, the district court held a hearing on Kearney's pro se motion to dismiss and the State's request for a continuance. After granting the State a continuance, Kearney argued his motion to dismiss and asserted that his statutory speedy trial rights were violated because he was not afforded a trial within 60 days of the probable cause determination. In denying the motion, the district court explained to Kearney that he was relying on outdated law and that the 60-day timeframe was merely directory.

The district court began a bench trial on January 18, 2017. At first, the district court took judicial notice, without objection, of Kearney's aggravated indecent liberties conviction. Kearney testified as the first witness. On the State's direct examination, Kearney admitted to his criminal history, including his abuse of the six-year-old girl. Kearney further testified, consistent with his treatment records and evaluations, that he engaged in sexual and general violence against others, abused alcohol and drugs, and acknowledged his criminal behavior since a young age.

The State next called Dr. Angelina Johnson, a psychologist who worked at Larned State Hospital. After going through her credentials, Johnson recounted her treatment sessions with Kearney. Johnson diagnosed Kearney with antisocial personality disorder, pedophilia, and several substance abuse disorders. Because of these disorders, Johnson testified that Kearney is likely to engage in repeat acts of sexual violence. Johnson also testified that Kearney had serious difficulty controlling his dangerous behavior. Johnson testified about various actuarial tests taken by Kearney, all of which revealed an increased chance to reoffend.

The State called Dr. Carol Crane as its next witness. Crane is a forensic psychologist who provides mental care for Kansas inmates. Crane testified that she also diagnosed Kearney with antisocial personality disorder and several substance abuse disorders, in addition to diagnosing him with narcissistic personality disorder. Based on these diagnoses, Crane testified that Kearney was a menace to the health and safety of

3

others. Crane also provided more in-depth testimony about the actuarial tests, concluding that the tests showed Kearney was at an increased risk to reoffend. Crane went on to testify that Kearney had serious difficulty controlling his dangerous behavior.

The defense called Dr. Gerald Gentry, a licensed psychologist, as its only witness. Gentry testified that he agreed with the State's experts diagnosing Kearney with a personality disorder, but he could not pinpoint a specific personality disorder because he never examined Kearney. Gentry then disagreed with Johnson and Crane over whether Kearney was likely to engage in repeat acts of sexual violence. Instead, Gentry testified that Kearney was likely to reoffend but not for a sexually violent offense. Gentry also disapproved of many evaluation techniques used by the State's experts. Specifically, Gentry testified that the State's analytical methods often conflated general violent acts with sexual violent acts, thus making it falsely appear as though Kearney would reoffend for a sexually violent offense.

On January 20, 2017, in a 12-page memorandum decision, the district court found that the State had proven beyond a reasonable doubt that Kearney was a sexually violent predator. The district court specifically found:  (1) Kearney had been convicted of a sexually violent crime; (2) Kearney suffers from antisocial personality disorder, pedophilia, and substance abuse disorders; (3) Kearney's mental disorders predispose him to commit sexually violent offenses; (4) Kearney poses a menace to the health and safety of society; and (5) Kearney's evaluations support these findings.

On January 27, 2017, the district court filed its formal journal entry committing Kearney to the custody of the Secretary of the Department of Aging and Disability Services. In the written journal entry, the district court restated many of its findings from the memorandum decision. Kearney timely appealed the district court's judgment.

Kearney first claims the State presented insufficient evidence for the district court to civilly commit him as a sexually violent predator. In particular, Kearney argues that the State failed to prove that he suffered from a mental abnormality and that he was likely to commit repeat acts of sexual violence. Kearney also contends that the district court failed to find a required element under the KSVPA, specifically whether Kearney had serious difficulty controlling his behavior. The State responds by asserting that it presented sufficient evidence to support Kearney's civil commitment under the KSVPA.

When presented with an issue of whether evidence was sufficient to sustain the State's burden of proof in a sexually violent predator case, this court's standard of review asks whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced a reasonable fact-finder could have found the State met its burden to demonstrate beyond a reasonable doubt that the individual in question is a sexually violent predator. See *In re Care & Treatment of Colt*, 289 Kan. 234, 243-44, 211 P.3d 797 (2009). Appellate courts do not reweigh the evidence, determine the credibility of witnesses, or resolve conflicts in evidence. *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

"'Sexually violent predator' means any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 2017 Supp. 59-29a02(a). Our Supreme Court interprets this definition as requiring the State to prove four elements beyond a reasonable doubt:

> "(1) [T]he individual has been convicted of or charged with a sexually violent offense,
> (2) the individual suffers from a mental abnormality or personality disorder, (3) the
> individual is likely to commit repeat acts of sexual violence because of a mental
> abnormality or personality disorder, and (4) the individual has serious difficulty

controlling his or her dangerous behavior. See K.S.A. 2010 Supp. 59-29a02(a); [*Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002)]; PIK Civ. 4th 130.20." *Williams*, 292 Kan. at 106.

Kearney concedes the first element, as he was convicted of aggravated indecent liberties with a child. See K.S.A. 2017 Supp. 59-29a02(e)(3). Kearney argues that there was insufficient evidence to establish the second element because the State's experts' diagnoses did not perfectly align, they relied on "inflated" data, and Crane relied on information related to polygraphs (specifically, a pre-polygraph questionnaire). Kearney cites *In re Care & Treatment of Foster*, 280 Kan. 845, 127 P.3d 277 (2006), for the proposition that expert opinions based on polygraph results are inadmissible.

Here, the State presented sufficient evidence that Kearney suffered from a mental abnormality or a personality disorder. "'Mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." K.S.A. 2017 Supp. 59-29a02(b). The statute does not define personality disorder.

At the commitment trial, Johnson expressly testified that she diagnosed Kearney with several substance abuse disorders, pedophilia (a mental abnormality), and antisocial personality disorder. Johnson based the antisocial personality disorder diagnosis on (1) Kearney's delinquent conduct as a juvenile, (2) his impulsivity, (3) his lack of remorse, (4) his continued show of violence as an adult inmate, and (5) his actuarial test scores. The pedophilia diagnosis resulted from Kearney's attraction to young children and his engaging in sexual activities several times with a six-year-old girl. Finally, Johnson based the substance abuse disorder diagnoses on Kearney's history of using alcohol and drugs as well as his inability to cope without them. Johnson based these diagnoses on interviews with Kearney, actuarial tests, and Kearney's records.

6

Crane confirmed Johnson's antisocial personality disorder, although differing with her other diagnoses. As mentioned, Crane diagnosed Kearney with antisocial personality disorder, narcissistic personality disorder, and multiple substance abuse disorders. Crane based these diagnoses on essentially the same basis as Johnson's antisocial personality disorder diagnosis; she simply found narcissistic personality also present under the same circumstances. Crane also concurred that the multiple substance abuse disorders resulted from his prior drug use history. And as with Johnson, Crane based these diagnoses on interviews with Kearney, actuarial tests, and Kearney's records.

Finally, Gentry diagnosed Kearney with an unspecified personality disorder. Viewing the diagnoses of Johnson, Crane, and Gentry in a light most favorable to the State, the State has sufficiently proven the second element beyond a reasonable doubt, i.e., that Kearney suffers from a mental abnormality or personality disorder. See *Williams*, 292 Kan. at 106-07 (finding that an expert witness diagnosing the defendant with antisocial personality disorder, alcohol dependence, substance abuse, exhibitionism, and paraphilia satisfied the second element).

We will now turn to some specific arguments Kearney makes about the second element. Kearney argues there was insufficient evidence that he suffered from a mental abnormality or personality disorder because the State's experts' diagnoses did not perfectly align. But the differing diagnoses are not troubling because all three experts agreed that Kearney suffered from a personality disorder, which is all that is required under the statutory definition of sexually violent predator. See K.S.A. 2017 Supp. 59-29a02(a). There is no legal requirement that diagnoses cannot differ.

Next, Kearney claims that the State's experts relied on "inflated" data in concluding that Kearney suffered from a mental abnormality or a personality disorder. The "inflated" data Kearney claims the State's experts relied on included his admission in his sexual offender treatment program that he had inappropriate contact with a

7

prepubescent child "no more than 50 times." Kearney claims that he exaggerated the actual number of times he had inappropriate contact at the treatment instructor's insistence. Kearney also claims that the definition of victim was too broad, causing him to inflate the number of actual victims by listing prior sexual partners who were not victims of violence. But Kearney ignores Johnson's testimony that even if the inappropriate contact occurred only eight times, as Kearney claimed on the stand, her diagnoses and opinions would have remained unchanged.

Lastly, Kearney argues that Crane improperly relied on information related to polygraphs (specifically, a pre-polygraph questionnaire). But as the State points out, Kearney failed to preserve this issue for appeal because he did not object to Crane's testimony about the pre-polygraph questionnaire or to the admission of her report based in part on that questionnaire. See K.S.A. 60-404. In any event, Kearney's polygraph argument is meritless. As Kearney notes, our Supreme Court has previously held that polygraph *results* and expert opinions based on those results were inadmissible under the KSVPA. *Foster*, 280 Kan. at 862-63. But Crane permissibly based her expert opinion on a pre-polygraph questionnaire while properly not testifying to the actual results. Also, K.S.A. 2017 Supp. 59-29a06(c) has been amended since *Foster* and now states that if the facts or data are of a type reasonably relied upon by experts in the particular field in forming their opinions, such facts and data need not be admissible in evidence in order for the expert opinion to be admitted in a proceeding under the KSVPA.

Next, Kearney contends the State presented insufficient evidence to prove the third element of the definition of a sexually violent predator, i.e., that he is likely to commit repeat acts of sexual violence. "'Likely to engage in repeat acts of sexual violence' means the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." K.S.A. 2017 Supp. 59-29a02(c).

8

At the commitment trial, Johnson and Crane both testified that Kearney was likely to engage in repeat acts of sexual violence because of his mental health diagnoses. Both experts testified that Kearney had a propensity to commit acts of sexual violence to such a degree as to pose a menace to the health and safety of others. Both agreed that their objective testing methods placed Kearney at an increased risk of reoffending if released.

Gentry contradicted the State's experts on this point by testifying that Kearney was likely to reoffend but not for sexual misconduct. He asserted that the tests used by Johnson and Crane could produce confusing results. Gentry primarily concluded that the State's analytical methods often conflated general violent acts with sexual violent acts, making it falsely appear as though Kearney would reoffend for a sexually violent offense.

Kearney is simply asking this court to reweigh the evidence and redetermine the credibility of witnesses on this point, which we are not permitted to do. See *Williams*, 292 Kan. at 104. The district court found Johnson's and Crane's testimony credible. Moreover, Gentry was not familiar with the actuarial tests he criticized in his testimony, and he performed no interviews or examinations of his own. Viewing the evidence in the light most favorable to the State, the State presented sufficient evidence to establish that Kearney was likely to commit repeat acts of sexual violence, consistent with the statutory definition of a sexually violent predator. See K.S.A. 2017 Supp. 59-29a02(a).

Finally, Kearney contends that the district court failed to find that the State established the fourth element, i.e., that Kearney has serious difficulty controlling his dangerous behavior. He presents this argument as an error of law. To determine whether the district court committed an error of law, this court exercises de novo review. *State v. Gary*, 282 Kan. 232, 236-37, 144 P.3d 634 (2006).

Kearney asserts that because the district court's memorandum decision did not expressly mention the fourth element, the district court failed to find that the State proved

9

the fourth element beyond a reasonable doubt. But the journal entry of commitment, which incorporated the memorandum decision, does in fact state that the district court made findings supported by the evidence, including the following: "[Kearney] displays serious difficulty in controlling his dangerous behavior." The district court, the State, and Kearney's counsel all signed the journal entry. Moreover, Johnson and Crane testified at the commitment trial that Kearney had serious difficulty controlling his dangerous behavior. Given that the journal entry expressly found that Kearney displays serious difficulty in controlling his dangerous behavior, and the State adequately established this element at the commitment trial, the district court sufficiently found that the State established the fourth element beyond a reasonable doubt when it civilly committed Kearney by finding him a sexually violent predator under the KSVPA.

SPEEDY TRIAL CLAIM

Next, Kearney claims his constitutional and statutory rights to a speedy trial were violated. As discussed earlier, Kearney filed a pro se motion to dismiss and two pro se writ of habeas corpus motions, all asserting his *statutory* speedy trial rights among other vague constitutional rights. In those vague constitutional claims, Kearney never asserted a constitutional speedy trial violation.

The State asserts that Kearney has failed to preserve his constitutional claim for appeal. Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014). And Kearney does not explain why he should be permitted to raise this issue for the first time on appeal, as required by Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34). See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) (strictly enforcing Supreme Court Rule 6.02[a][5]). By failing to raise the constitutional speedy trial claim below, Kearney has precluded this court from applying the correct standard of review to this issue. See *In re Care &*

10

*Treatment of Ellison*, 305 Kan. 519, 533, 385 P.3d 15 (2016) (holding that this precise issue presents a question of fact, which requires the district court to first make findings for this court to review, and law). As a result, Kearney may not raise this issue for the first time on appeal. See *In re Care & Treatment of Thompson*, No. 114,617, 2016 WL 3961541, at *9 (Kan. App.) (unpublished opinion) (declining to reach the merits of the same argument for the same reasons), *rev. denied* 305 Kan. 1252 (2016).

As for Kearney's statutory speedy trial claim, we exercise unlimited review. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009). K.S.A. 2014 Supp. 59-29a06(a) states: "Within 60 days after the completion of any hearing held pursuant to K.S.A. 59-29a05 [requiring a probable cause determination], and amendments thereto, the court shall conduct a trial to determine whether the person is a sexually violent predator." Kearney argues that his statutory speedy trial rights were violated because the time between his probable cause determination and the commitment trial greatly exceeded 60 days. However, the law is abundantly clear that all time requirements in the KSVPA are directory, not mandatory, and merely serve as guidelines for conducting proceedings. See K.S.A. 2017 Supp. 59-29a01(b); *In re Care & Treatment of Hunt*, 32 Kan. App. 2d 344, 365, 82 P.3d 861 (2004) (finding, in the exact same statute as the 2014 version, that the 60-day time limit was only directory). Without a binding timeline, Kearney's statutory speedy trial rights could not have been violated.

Affirmed.