NOT DESIGNATED FOR PUBLICATION

No. 116,948

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
JAMES A. HASH.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed August 10, 2018. Affirmed.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellant.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

PER CURIAM:  James A. Hash appeals his involuntary civil commitment as a sexually violent predator under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 et seq. Hash first claims that his trial counsel's representation constituted ineffective assistance of counsel and denied his right to a fair trial. But without a sufficient record, we decline to address this claim for the first time on direct appeal. Hash also claims there was insufficient evidence to support the district court's order of commitment. But viewing the evidence in the light most favorable to the State, we find that the State presented sufficient evidence for the district court to civilly commit Hash as a sexually violent predator. Thus, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Hash pled guilty to one count of rape and the district court sentenced him to 147 months' imprisonment. On February 11, 2014, before Hash's anticipated release date, the State filed a petition seeking to have Hash deemed a sexually violent predator under the KSVPA and to have him involuntarily committed. At the first appearance, the district court provided Hash with a copy of the petition and appointed counsel to represent him. At the preliminary hearing, the district court found probable cause that Hash was a sexually violent predator and transferred him to Larned State Hospital for further evaluation. From there, the commitment proceedings progressed slowly. On February 22, 2016, Hash's court-appointed counsel withdrew because of an alleged conflict of interest. Hash retained Scott Toth as trial counsel in February 2016.

The district court began a bench trial on August 1, 2016. At first, the district court took judicial notice, without objection, of Hash's rape conviction. The State called Olathe Police Department Patrol Sergeant Tim Sweeney, the lead detective in Hash's rape case, as its first witness. Sweeney detailed the rape case: the victim was a 16-year-old girl with severe mental disabilities, who could not care for herself; Hash often cared for her and viewed her as a sister; and the victim's family discovered the rape after Hash impregnated her. Sweeney concluded by testifying that Hash admitted to raping the victim.

The State then called Gena Shorter, a licensed clinical social worker and substance abuse counselor, who had treated Hash at the Hutchinson Correctional Facility. Shorter testified about the many written assignments Hash completed as part of his sex offender treatment. For example, Shorter testified that Hash listed many fetishes, including frottage (groping of women), zoophilia (which he actually performed twice with dogs), necrophilia, incest, and rape fantasies. Shorter testified that Hash provided assignment answers indicating that he thought of minors and his victim when he masturbated.

2

The State next called Dr. Carol Crane, a forensic psychologist who had reviewed numerous records and conducted an in-person interview with Hash. Crane testified that she diagnosed Hash with multiple paraphilic disorders, avoidant personality disorder, generalized anxiety disorder, and two substance-related disorders (cannabis and alcohol). Based on these diagnoses, Crane testified that Hash was likely to reoffend for a sexually violent crime and that he had serious difficulty controlling his dangerous behavior. Crane then provided detailed testimony about how and why she reached those opinions. Crane went on to testify that her actuarial tests initially placed Hash in the low to moderate risk category for reoffending, but she clarified that this result was an underestimate due to Hash's later disclosure of other victims. With this new information, the tests put Hash in the moderate to high risk category for reoffending, her final conclusion.

The State next called Dr. Angelina Johnson, a psychologist who treated Hash at Larned State Hospital. Johnson held a temporary license to practice in Kansas when she treated Hash, so she treated him under a licensed psychologist's supervision. After going through her credentials, Johnson recounted her treatment sessions with Hash and her review of his records. Johnson diagnosed Hash with avoidant personality disorder with antisocial features, cannabis dependence, alcohol dependence, and sexual abuse of an adult. Because of these disorders, Johnson testified that Hash was likely to engage in repeat acts of sexual violence. Johnson also testified that Hash had serious difficulty controlling his dangerous behavior. Finally, Johnson testified about various actuarial tests taken by Hash, all of which revealed an increased chance to reoffend.

Hash presented Dr. Richard Krueger, a licensed psychiatrist at the Columbia University Medical Center and New York State Psychiatric Institute, as his first witness. Krueger covered his credentials, then reviewed his interview with Hash, and finally detailed his inspection of Hash's records. Krueger opined that Johnson's diagnoses were flawed because she reached them based on an outdated version of the Diagnostic and Statistical Manual of Mental Disorders (DSM). Krueger diagnosed Hash with alcohol

3

abuse, cannabis dependence, and an unspecified personality disorder. But Krueger disagreed with Johnson and Crane over whether Hash was likely to engage in repeat acts of sexual violence, concluding that Hash was unlikely to reoffend. Krueger also disapproved of Johnson's and Crane's use of the actuarial tests. Krueger testified that a proper scoring placed Hash in the low, or even extremely low, risk category.

Hash also called Mike Gardner, supervisor of the Kansas parole office in Olathe, who testified about the restrictions Hash would face if released. Finally, Hash called his stepfather, Anthony Hash, who testified about the accommodations he would be willing to make to support Hash if released and to ensure his compliance with release conditions. Hash did not testify at the hearing.

On October 19, 2016, the district court filed a comprehensive memorandum decision with detailed findings of fact and conclusions of law, finding that the State had proven beyond a reasonable doubt that Hash was a sexually violent predator. The district court found: (1) Hash had been convicted of a sexually violent crime; (2) Hash suffers from a personality disorder and various mental abnormalities; (3) Hash's mental disorders predispose him to commit sexually violent offenses; (4) Hash has difficulty controlling his sexual behaviors; and (5) Hash poses a menace to the health and safety of society.

On October 25, 2016, the district court filed its formal journal entry committing Hash for treatment as a sexually violent predator. Hash timely appealed the district court's judgment. During his appeal, on October 23, 2017, Hash filed a motion to remand for a hearing on an ineffective assistance of counsel claim pursuant to *State v. Van Cleave*, 239 Kan. 117, 120, 716 P.2d 580 (1986). On November 2, 2017, this court denied the motion. Additional facts will be provided to address the issues on appeal.

4

Hash first claims that his trial counsel's representation constituted ineffective assistance of counsel and denied his right to a fair trial. He bases his claim on three alleged errors: (1) Toth failed to challenge whether the district court obtained personal jurisdiction over him; (2) Toth failed to exclude the State's experts' testimony based on a lack of compliance with discovery requirements; and (3) Toth failed to challenge the expert status of the State's expert witnesses. Hash also claims that the three alleged errors amount to cumulative error establishing ineffective assistance of counsel.

The State contends that Hash cannot raise his ineffective assistance of counsel claim for the first time on direct appeal. On the merits, the State argues that Toth was not ineffective and that the alleged errors were reasonable strategic decisions.

Under the federal and state due process provisions, KSVPA respondents are entitled to the effective assistance of counsel during commitment proceedings. *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 19, 25, 287 P.3d 855 (2012). A KSVPA respondent may raise an ineffective assistance of counsel claim for the first time on appeal using the *Van Cleave* remand procedures or through a collateral attack under K.S.A. 60-1501. 295 Kan. at 27. The two-prong *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test applies to KSVPA ineffective assistance of counsel claims, just like criminal ineffective assistance claims. *Ontiberos*, 295 Kan. at 28.

Generally, an appellate court will not consider an allegation of ineffective assistance of counsel raised for the first time on direct appeal. *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014). To support an ineffective assistance of counsel claim, a party generally needs to develop the facts and present evidence of trial counsel's ineffectiveness. The district court is in the best position to assess such evidentiary based claims. *Rowland v. State*, 289 Kan. 1076, 1084, 219 P.3d 1212 (2009). For that reason,

absent a *Van Cleave* hearing, KSVPA respondents must ordinarily file a K.S.A. 60-1501 motion to raise an ineffective assistance of counsel claim. See *Ontiberos*, 295 Kan. at 27 (holding that KSVPA defendants may raise an ineffective assistance claim through a collateral attack under K.S.A. 60-1501).

An appellate court has three options in handling an ineffective assistance of counsel claim raised for the first time on direct appeal. *State v. Reed*, 302 Kan. 227, 233-34, 352 P.3d 530 (2015). First, the appellate court can follow the general rule and decline to address the claim because of an inadequate evidentiary record. Second, the appellate court may remand for a *Van Cleave* hearing. 302 Kan. at 233-34. But to warrant a *Van Cleave* hearing, the appellant's counsel must conduct at least some investigation into the claim in an attempt to justify with evidence that trial counsel acted ineffectively. *State v. Levy*, 292 Kan. 379, 389, 253 P.3d 341 (2011) (citing *Van Cleave*, 239 Kan. at 119-21). Third, in extremely rare circumstances, the appellate court will consider the ineffective assistance of counsel claim on direct appeal because the record is sufficient without a *Van Cleave* hearing, but the claim's merit must be obvious from the record. *Reed*, 302 Kan. at 234 (quoting *Dull*, 298 Kan. at 839).

Here, while Hash's appeal was pending, he filed a motion to remand for a hearing on his ineffective assistance of counsel claim pursuant to *Van Cleave*. But the motion did not indicate that Hash's appellate counsel had conducted a sufficient investigation into the claim to warrant a remand for an evidentiary hearing. In particular, the motion did not state whether appellate counsel had ever contacted the prosecutor or trial counsel to investigate the ineffectiveness claims, which would be the bare minimum investigation to lodge a charge of ineffective assistance of counsel. See *Van Cleave*, 239 Kan. at 120. As a result, this court denied Hash's motion to remand for a hearing under *Van Cleave*.

Without a *Van Cleave* hearing, this court can consider Hash's ineffective assistance of counsel claim for the first time on direct appeal only in the rare

6

circumstance that the claim's merit is obvious from the record. This is not such a case because we cannot determine from the record on appeal whether Toth's alleged deficient performance may have been the result of reasonable strategic decisions by counsel. For these reasons, we decline to address Hash's ineffective assistance of counsel claim for the first time on direct appeal. Hash may file such a claim in a collateral proceeding under K.S.A. 60-1501. See *Ontiberos*, 295 Kan. at 27.

SUFFICIENCY OF THE EVIDENCE

Hash next claims the State presented insufficient evidence for the district court to civilly commit him as a sexually violent predator. In particular, Hash argues that the State failed to prove that he is likely to commit repeat acts of sexual violence and that he has difficulty controlling his dangerous behavior. Hash also argues that the State's experts' opinions were based on stale information. The State responds by asserting that it presented sufficient evidence to support Hash's civil commitment under the KSVPA.

When presented with an issue of whether evidence was sufficient to sustain the State's burden of proof in a sexually violent predator case, this court's standard of review asks whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced a reasonable fact-finder could have found the State met its burden to prove beyond a reasonable doubt that the individual in question is a sexually violent predator. *In re Care & Treatment of Colt*, 289 Kan. 234, 243-44, 211 P.3d 797 (2009). In making this determination, an appellate court does not reweigh the evidence, determine the credibility of witnesses, or resolve conflicts in the evidence. *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

"'Sexually violent predator' means any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual

7

violence." K.S.A. 2017 Supp. 59-29a02(a). Our Supreme Court interprets this definition as requiring the State to prove four elements beyond a reasonable doubt:

> "(1) [T]he individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior. See K.S.A. 2010 Supp. 59-29a02(a); [*Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002)]; PIK Civ. 4th 130.20." *Williams*, 292 Kan. at 106.

Hash concedes the first element, as he was convicted of rape in 2004. He also concedes the second element that he was diagnosed with a mental abnormality or personality disorder. But Hash argues that the State failed to prove the third element that he is likely to commit repeat acts of sexual violence. For the third element, "'[l]ikely to engage in repeat acts of sexual violence' means the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." K.S.A. 2017 Supp. 59-29a02(c). Hash also argues that the State failed to prove the fourth element that he has serious difficulty controlling his dangerous behavior.

At the commitment trial, Johnson and Crane both testified that Hash was likely to engage in repeat acts of sexual violence and that he had difficulty controlling his dangerous behavior. Johnson and Crane agreed that Hash's records and diagnoses, actuarial test scores, and interviews all presented a person who was likely to continue a streak of sexual violence he could not control. Krueger disagreed with Johnson and Crane over whether Hash was likely to engage in repeat acts of sexual violence, concluding that Hash was unlikely to reoffend. Krueger also disapproved of Johnson's and Crane's use of the actuarial tests. Krueger testified that a proper scoring placed Hash in the low, or even extremely low, risk category.

The district court's 23-page memorandum decision included 62 itemized findings of fact, mostly focused on the expert opinions of Johnson, Crane, and Krueger, including the results of their actuarial testing. The district court noted that the expert opinions diverged in this case. In the end, the district court found that the State met its burden of proving that Hash was a sexually violent predator, stating:

"While the evidence includes conflicting results and opinions and cannot be viewed as overwhelming in light of the State's burdens of proof, the Court must consider the totality of all the evidence as presented in this bench trial. The State has established that Hash was convicted of a sexually violent offense, that he suffers from a personality disorder or disorders and that those disorders make him likely to engage in repeat future acts of sexual violence. These disorders continue to be present with Hash to the extent that he is unable to maintain and control his sexual behaviors due to these persistent traits. The Court finds that Hash's propensity to commit acts of sexual violence is proven beyond a reasonable doubt and to the degree that he poses a menace to the health and safety of the community at-large."

On appeal, this court's standard of review asks whether, after viewing all the evidence in the light most favorable to the State, we are convinced a reasonable fact-finder could have found the State met its burden to prove beyond a reasonable doubt that Hash is a sexually violent predator. See *Colt*, 289 Kan. at 243-44. This court does not reweigh the evidence, determine the credibility of witnesses, or resolve conflicts in the evidence. See *Williams*, 292 Kan. at 104. Viewing the evidence in the light most favorable to the State, we find that the State presented sufficient evidence to establish that Hash was likely to commit repeat acts of sexual violence and he was unable to control his dangerous behavior, consistent with the statutory definition of a sexually violent predator.

Finally, Hash tries to undermine the State's evidence by arguing that its experts' opinions were based on outdated and stale information. In particular, Hash argues that because the State's experts examined him in 2014, the State failed to prove that he met

the definition of a sexually violent predator at the time of the commitment trial. This argument is unpersuasive. At trial, Johnson and Crane both testified their present-day opinions were that Hash was a sexually violent predator. Hash provides no legal authority to support his claim that Johnson and Crane could not render expert opinions that Hash was a sexually violent predator simply because they had conducted their initial evaluations of Hash two years before the trial. Hash cross-examined Johnson and Crane as to the alleged staleness of the information supporting their opinions, and the district court weighed the issue along with the rest of the evidence. Viewing the evidence in the light most favorable to the State, we conclude that the State presented sufficient evidence for the district court to civilly commit Hash as a sexually violent predator.

Affirmed.